## EXHIBIT D

| | | |
|---|---|---|
| DOCKET NO.: FBT-CV-18-6076680-S | : | SUPERIOR COURT |
| JPMORGAN CHASE BANK, NATIONAL ASSOCIATION | : | JUDICIAL DISTRICT OF FAIRFIELD |
| PLAINTIFF | : | AT BRIDGEPORT |
| VS | : | JULY 8, 2019 |
| JOHNNY RAY MOORE | : | |
| DEFENDANT | : | |

### DEFENDANT'S MOTION TO DISMISS FOR LACK OF JURISDICTION OVER THE SUBJECT MATTER

**NOW COMES,** Johnny Ray Moore, the above named Defendant, Pursuant to Connecticut Practice Book § 10-34, hereby respectfully moves the Court to Dismiss the writ, summons and complaint on the bases that JPMorgan Chase Bank National Association, herein called ("the named Plaintiff"), is without STANDING to bring this action before the Court. The Defendant claims that the named Plaintiff is not the owner and holder in due course of the Note / Debt pursuant to UCC § 3-302. The Defendant claims the named Plaintiff is not in possession of the Note and Mortgage as alleged in its Complaint. The Defendant claims the Mortgage Deed that was recorded on the Public Land Records in the town of Stratford on January 31, 2007 in Volume 2997 at Page 250, was not recorded by named Plaintiff in 2007, but by Mortgage Electronic Registration Systems Inc., herein called MERS (*see* certified copy of EXHIBIT A). The Defendant claims that MERS is not the holder in due course of the Note and is without STANDING to foreclose on the Defendant's Mortgage.

Connecticut Practice Book Section 10-34. Motion to Dismiss – If any motion to dismiss is denied with respect to any jurisdictional issue, the defendant may plead further without waiving the right to contest jurisdiction further.

**ORAL ARUGMENT REQUESTED**
**TESTIMONY IS REQUIRED**                    1.

The Defendant claims Hunt Leibert Jacobson P.C., aka as McCalla Raymer Liebert Pierce LLC, herein called ("counsel for the named Plaintiff"), have with willful intent chosen [not] to disclose its true intention to the Court regarding the *cause of action* filed on the Public Land Records in the Town of Stratford on July 10, 2018, in Volume 4189 Page 343. The Defendant claims that the named Plaintiff on the public land records announced to the world the reason for the civil action is to foreclose the Mortgage from the Defendant to MERS. The Defendant claims in an attempt to deceive the Defendant and the Court, of its true intentions for the commencement of this foreclosure action. The Defendant claims this genuine issue of material fact that has not been disclosed in the Complaint. The Defendant claims according to the Complaint at #5, the action is brought *inter alia* by the named Plaintiff, as the party seeking relief for damages. The Defendant claim this is not true.

In support of the Defendant's Motion to Dismiss the named Plaintiff's Complaint. The Defendant declares the following for the RECORD:

1.    The Defendant claims that this *cause of action*, brought *inter alia*, or in *personam* or at *remedy at law*, is brought to foreclose the Mortgage to MERS and not to the named Plaintiff alleged in # 5 of the Complaint. (*see* EXHIBIT B). This is a material fact being disputed by the Defendant.

2.    The Defendant claims that according to the Lis Pendens filed on the Public Land Records and Recorded in the Town of Stratford on July 10, 2018, in Volume 4189 Page 343, the *cause of action*, announced to the world a civil action was commenced to foreclose a certain Mortgage from the Defendant to MERS. (see a certified copy of EXHIBIT C).                                    2.

3.    The Defendant claims that counsel for the Plaintiff is acting on behalf of MERS and # 6 of the Complaint is a material misrepresentation of the facts that is being disputed by the Defendant, because MERS never assigned the Note to the named Plaintiff.

4.    The Defendant claims counsel for the named Plaintiff's, seeks to mislead the Defendant and the Court into believing that counsel for the named Plaintiff is acting on behalf of the named Plaintiff. When in [fact], counsel for the named Plaintiff drafted the Assignment of Mortgage and filed it on the Public Land Record. Therefore is fully aware of the material facts, that counsel for the named Plaintiff is acting solely on behalf of MERS and [n]ot the named Plaintiff alleged in the caption of the Complaint.

5.    The Defendant ask the Court to take Judicial Notice of the certified copy of the Assignment of Mortgage that was filed on the Public Land Records in the Town of Stratford on April 14, 2010, in Volume 3373 Page 097 and states the following for the RECORD: (see certified copy of EXHIBIT D).

1.    The Defendant claims the Assignment of Mortgage was filed in bad faith and represents an act of fraud upon the Court by counsel for the named Plaintiff, because the Note and / or Debt was not Assigned according to the writing drafted by counsel for the named Plaintiff.

(a) The Defendant claims an assignment mortgage without the note is a nullity.

2.    The Defendant claims that according to the Mortgage Deed, MERS is the Mortgagee of Record and therefore MERS did not act in good faith by claiming the Mortgage assigned to the named Plaintiff, when in fact no conveyance actual took place

3.

according to Connecticut General Statute § 47-10.

3.      The Defendant claims that MERS was not acting in the capacity of the nominee

On behalf of Mortgage Capital Associates Inc., when on April 14, 2010, having the legal

authority to assign the Defendant's Mortgage without the Note to JPMorgan Chase

Bank National Association, the named Plaintiff.

4.      The Defendant claims that counsel for the named Plaintiff is the holder in Due

Course of the Note is false and misleading, and the beneficial parties have not been

disclosed to the Defendant nor the Court and the Assignment of Mortgage represents

forgery.

6.      The Defendant claims that the Assignment of Mortgage, drafted by counsel on

behalf of the named Plaintiff was not only filed in bad faith, but was also filed with

fraudulent intention to mislead the Defendant and the Court. The Defendant claims that

counsel for the named Plaintiff is fully aware of the material fact that MERS is without

STANDING to foreclose on the Defendant's Mortgage, as the Mortgagee of

RECORD. **Sec. 53a-139. Forgery in the second degree: Class D felony.** (a) A person is
guilty of forgery in the second degree when, with intent to defraud, deceive or injure another, he
falsely makes, completes or alters a written instrument or issues or possesses
any written instrument which he knows to be forged, which is or purports to be, or which is
calculated to become or represent if completed: (1) A deed, will, codicil, contract, assignment,
commercial instrument or other instrument which does or may evidence, create, transfer,
terminate or otherwise affect a legal right, interest, obligation or status; or (2) a public record or
an instrument filed or required or authorized by law to be filed in or with a public office or public
servant; or (3) a written instrument officially issued or created by a public office, public servant
or governmental instrumentality;

7.      The Defendant claims that MERS should have been named as the Plaintiff in

the Writ, Summons and Complaint and is not. (see copy of EXHIBIT E).

8.      The Defendant claims that MERS should have been named as the Plaintiff in

4.

the caption of the Complaint and is not.

9.      The Defendant claims that MERS should have been named as the Plaintiff in the caption of the Notice of Lis Pendens and is not.

10.     The Defendant claims that MERS was not acting in any nominee capacity on behalf of Mortgage Capital Associates Inc, when counsel for the named Plaintiff drafted and filed the Assignment of Mortgage pursuant to Connecticut General Statute § 47-10, on the land records concerning the alleged conveyance.

11.     The Defendant claims that the Assignment of Mortgage is void because no rights are conveyed by counsel for the named Plaintiff by MERS.

12.     The Defendant claims that the named Plaintiff is not the holder in due course of the Note and Mortgage, and that the Note was never assigned to the named Plaintiff by MERS and counsel for the named Plaintiff is fully aware of this material fact.

13.     The Defendant claims that counsel for the named Plaintiff, is fully aware of the material fact that MERS is without authority to have commenced this action against the Defendant to foreclose on the Defendant's Mortgage and the Court must dismiss this Complaint Pursuant to **Connecticut General Statute Section 33-921.**
"Consequences of transacting business without authority. (a) A foreign corporation transacting business in this state without a certificate of authority may not maintain a proceeding in any court in this state until it obtains a certificate of authority".

14.     The Defendant claims that the chain of tile to the mortgage is broken and Pursuant to Connecticut General Statute § 47-33, the mortgage lien cannot be enforced against the collateral of the subject property.

15.     The Defendant claims on February 4, 2015, the Defendant received a personal discharge of this mortgage debt under Title 11, Section 727, of the United States Bankruptcy Code. (see EXHIBIT F,  a certified copy of the Discharge of Debt).

5.

16.     The Defendant claims that the *cause of action*, this *action in personam*, seeking *remedy at law*, by way of strict foreclosure is in violation of the Defendant's Discharge Injunction Pursuant to 11 U.S.C. Section 524(a)(1)(2).

**WHEREFORE**, the Defendant for the claims pleaded, the prayer for relief, is  that this Court will dismiss this complaint. The allegations made in the complaint before the Court by counsel for the named Plaintiff, do not disclose the true intention why counsel for the Plaintiff brought this action.  The true intent for the *cause of action*, not disclosed in the Complaint to the Court, is to foreclose the Defendant's Mortgage to MERS. MERS is not named as the Plaintiff in the Complaint. Nor in the Writ and Summons. MERS is not named in the Caption of the Notice of Lis Pendens filed on the Land Records, of which the Lis Pendens, was not attached to the Writ, Summons and Complaint, and filed with the Court. Nor was the Lis Pendens served upon the Defendant at his usual place of abode in violation of the Defendant's Constitutional and Civil Rights to Due Process. The Defendant claims the neither the named Plaintiff and MERS are not the owner and holder in due course of the Note and / or Debt and the chain of title to the subject property in broken. The Assignment of Mortgage drafted by counsel for the named Plaintiff is based on forgery and this Court should not only dismiss this action for the fraud upon the Court it is,  but this matter should be referred over to the office of the States attorney for investigation after the Court makes its findings because no delivery of the Note and Mortgage was actual made by MERS.

THE DEFENDANT,

Johnny Ray Moore, Pro Se
15 Sachem Drive
Shelton CT 06484
203-395-4282
greenenergyjrm@gmail.com

## <u>ORDER</u>

The foregoing Motion to Dismiss having been presented to the Court, after

Hearing had, it is Hereby ORDER:

GRANTED/ DENIED

BY THE COURT

_____

Judge /Clerk

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above Motion to Dismiss was mailed or

electronic mail delivered on July 8, 2019, to the following party listed below:

Attorney William J. Davenport
McCalla Raymer Leibert Pierce, LLC
50 Weston Street
Hartford CT 06120
willaim.davenport@mccalla.com

Attorney Christopher Picard
McCalla Raymer Leibert Pierce, LLC
50 Weston Street
Hartford CT 06120
chris.picard@mccalla.com

THE DEFENDANT,

Johnny Ray Moore, Pro Se
15 Sachem Drive
Shelton CT 06484
203-395-4282
greenenergyjrm@gmail.com

8.

# EXHIBIT _A_ .

9.

**STATE OF CONNECTICUT** }
**COUNTY OF FAIRFIELD** }  ss:

## STRATFORD
## OFFICE OF TOWN CLERK

I, Susan M. Pawluk, Town Clerk of said Town, duly APPOINTED and qualified according to law and having custody of the seal of said Town, hereby certify that the annexed instrument is a true copy from the **STRATFORD LAND RECORDS**, and that the original instrument from which said copy is taken recorded in

DESCRIPTION:  Mortgage
DATE:  2/1/2007
BOOK/PAGE  2997/250

**IN TESTIMONY WHEREOF**, I have hereunto set my hand and affixed the seal of said Town of Stratford this  6th day of June, 2019                    .

Number of Pages  24

SUSAN M. PAWLUK
Town Clerk
Town of STRATFORD

/0

BK: 2997 PG: 250   02/01/2007   MORTGAGE   Image: 1 of 24

001114            VL 2997PG 250

After Recording Return To:
MORTGAGE CAPITAL ASSOCIATES, INC.
11150 WEST OLYMPIC BOULEVARD, #1160
WEST LOS ANGELES, CALIFORNIA 90064
Loan Number: 07010417

———————————— [Space Above This Line For Recording Data] ————————————

# OPEN-END MORTGAGE DEED

MIN: 1001330-0100057336-6

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated   JANUARY 31, 2007   , together with all Riders to this document.
(B) "Borrower" is  JOHNNY RAY MOORE

Borrower is the mortgagor under this Security Instrument.
(C) "MERS" is  Mortgage Electronic Registration Systems, Inc.  MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns.  MERS is the mortgagee under this Security Instrument.  MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(D) "Lender" is   MORTGAGE CAPITAL ASSOCIATES, INC.

Lender is a   CALIFORNIA CORPORATION, IT'S SUCCESSORS AND/OR ASSIGNS          organized and existing under the laws of   CALIFORNIA
Lender's address is   11150 WEST OLYMPIC BOULEVARD, #1160, WEST LOS ANGELES, CALIFORNIA 90064

(E) "Note" means the promissory note signed by Borrower and dated   JANUARY 31, 2007
The Note states that Borrower owes Lender  TWO HUNDRED SIXTY-SEVEN THOUSAND AND 00/100                          Dollars (U.S. $ 267,000.00        ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than FEBRUARY 1, 2037          .
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

CONNECTICUT--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS          DocMagic *Fevus* 800 649 1362
Form 3007 01/01                                 Page 1 of 13                                      www.docmagic.com

//

BK: 2997 PG: 250    02/01/2007    MORTGAGE    Image: 2 of 24

VL 2997PG 251

(H)  "**Riders**" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☒ Adjustable Rate Rider          ☐ Planned Unit Development Rider
☐ Balloon Rider                        ☐ Biweekly Payment Rider
☒ 1-4 Family Rider                    ☐ Second Home Rider
☐ Condominium Rider              ☒ Other(s) [specify]
                                                   PREPAYMENT RIDER TO SECURITY INST

(I)  "**Applicable Law**" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J)  "**Community Association Dues, Fees, and Assessments**" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K)  "**Electronic Funds Transfer**" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L)  "**Escrow Items**" means those items that are described in Section 3.

(M)  "**Miscellaneous Proceeds**" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for:  (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N)  "**Mortgage Insurance**" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O)  "**Periodic Payment**" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P)  "**RESPA**" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter.  As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q)  "**Successor in Interest of Borrower**" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender:  (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower in consideration of this debt does hereby grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in the          COUNTY                        of                    FAIRFIELD                    :
                                    [Type of Recording Jurisdiction]                    [Name of Recording Jurisdiction]

CONNECTICUT--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS        DocMagic ℰℱℴℛℳℴ 800-849-1362
Form 3007 01/01                                    Page 2 of 13                                        www.docmagic.com

UCONT.MSG

VL 2997 PG 252

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
A.P.N.: 50/8 5 21

which currently has the address of   10 ROSEMARY DRIVE
                                                              [Street]

      STRATFORD                        , Connecticut    06615    ("Property Address"):
        [City]                                          [Zip Code]

      TO HAVE AND TO HOLD this property unto MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.
      BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.
      THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

      UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
      1.   Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.
      Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim

CONNECTICUT—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS         DocMagic *eFormns* 800-649-1362
Form 3007 01/01                              Page 3 of 13                                  www.docmagic.com

BK: 2997 PG: 250   02/01/2007   MORTGAGE   Image: 4 of 24

VL 2997PG 253

which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree

14

Ct3007.mzd

VL 2997 PG 254

in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.  **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.  **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any

15

BK: 2997 PG: 250    02/01/2007    MORTGAGE    Image: 6 of 24

VL 2997 PG 255

form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.  Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.  Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.  Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

CONNECTICUT--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS    DocMagic eForms 800-649-1362
Form 3007 01/01                                                    Page 6 of 13                                www.docmagic.com

16

C2007-mad

BK: 2997 PG: 250  02/01/2007  MORTGAGE  Image: 7 of 24

VL 2997PG 256

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

CONNECTICUT--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS    DocMagic ⓔℱᴏʀᴍs 800-649-1362
Form 3007 01/01                          Page 7 of 13                            www.docmagic.com

17

Ct3007.mnd

BK: 2997 PG: 250    02/01/2007    MORTGAGE    Image: 8 of 24

VL 2997 PG 257

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate

CONNECTICUT–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS    DocMagic 800-649-1362
Form 3007 01/01    Page 8 of 13    www.docmagic.com

VL 2997 PG 258

as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's

CONNECTICUT--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS    DocMagic 800-849-1362
Form 3007 01/01                                Page 9 of 13                    www.docmagic.com

*19*

C3007.mzd

BK: 2997 PG: 250   02/01/2007   MORTGAGE   Image: 10 of 24

VL 2997PG 259

address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will

CONNECTICUT--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3007 01/01
Page 10 of 13

DocMagic ℮Ϝℴ𝓻𝓶ℴ 800-649-1362
www.docmagic.com

*20*

VL 2997 PG 260

state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and foreclosure or sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in court the non-existence of a default or any other defense of Borrower to acceleration and foreclosure or sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require

21

C3007.mzd

VL 2997 PG 261

# SCHEDULE A

# PROPERTY DESCRIPTION

All that certain piece or parcel of land, together with the buildings and improvements thereon, situated in the Town of Stratford, County of Fairfield and State of Connecticut, shown as Lot 1, on map of "Subdivision of Bard's Manor Elm Street Stratford Conn" made by Cockspoti & Associates, Stratford, Conn., dated August 8, 1977, Scale 1" = 40', on file in the Stratford Town Clerk's Office, bounded:

Northerly:    On land now or formerly of Denklee & Bosch, 112.00 feet.
Easterly:     On Lot 2, as shown on said map, 95.89 feet.
Southerly:    On Rosemary Drive, 112.07 feet.
Westerly:     On Elm Street, 99.06 feet.

BK: 2997 PG: 250  02/01/2007  MORTGAGE  Image: 13 of 24

VL 2997 PG 262

immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke any of the remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

23. **Release.** Upon payment and discharge of all sums secured by this Security Instrument, this Security Instrument shall become null and void and Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Waivers.** Borrower waives all rights of homestead exemption in, and statutory redemption of, the Property and all right of appraisement of the Property and relinquishes all rights of curtesy and dower in the Property.

25. **Future Advances.** Lender is specifically permitted, at its option and in its discretion, to make additional loans and future advances under this Security Instrument as contemplated by Section 49-2(c) of the Connecticut General Statutes, and shall have all rights, powers and protections allowed thereunder.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
JOHNNY RAY MOORE            -Borrower

_____ (Seal)
                            -Borrower

_____ (Seal)
                            -Borrower

_____ (Seal)
                            -Borrower

_____ (Seal)
                            -Borrower

_____ (Seal)
                            -Borrower

Signed, sealed and delivered in the presence of:

_____
Witness

_____
Witness: Maria Clement

CONNECTICUT--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3007 01/01                          Page 12 of 13

DocMagic eForms 800-649-1362
www.docmagic.com

23

VL 2997 PG 263

State of Connecticut
County of  FAIRFIELD                ss:  Trumbull

The foregoing instrument was acknowledged before me this  January 31, 2007
by   JOHNNY RAY MOORE

Signature of Person Taking Acknowledgment
Joseph F. Varrone, Jr.
Commissioner of the Superior Court
Title

Serial Number, if any

(Seal)                                                                               ~~MY COMMISSION EXPIRES~~

CONNECTICUT--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS          DocMagic eForms 800-649-1362
Form 3007 01/01                                      Page 13 of 13                        www.docmagic.com

24

CC007.mzd

BK: 2997 PG: 250    02/01/2007    MORTGAGE    Image: 15 of 24

VL 2997 PG 264

Loan Number: 07010417

## 1-4 FAMILY RIDER
### (Assignment of Rents)

THIS 1-4 FAMILY RIDER is made this 31st day of JANUARY, 2007 ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to
secure Borrower's Note to MORTGAGE CAPITAL ASSOCIATES, INC., A
CALIFORNIA CORPORATION
(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

10 ROSEMARY DRIVE, STRATFORD, CONNECTICUT 06615
[Property Address]

1-4 FAMILY COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY
INSTRUMENT.** In addition to the Property described in Security Instrument, the following
items now or hereafter attached to the Property to the extent they are fixtures are added to the
Property description, and shall also constitute the Property covered by the Security Instrument:
building materials, appliances and goods of every nature whatsoever now or hereafter located
in, on, or used, or intended to be used in connection with the Property, including, but not
limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas,
water, air and light, fire prevention and extinguishing apparatus, security and access control
apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves,
refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors,
screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and
attached floor coverings, all of which, including replacements and additions thereto, shall be
deemed to be and remain a part of the Property covered by the Security Instrument. All of the
foregoing together with the Property described in the Security Instrument (or the leasehold
estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and
the Security Instrument as the "Property."

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek,
agree to or make a change in the use of the Property or its zoning classification, unless Lender
has agreed in writing to the change. Borrower shall comply with all laws, ordinances,
regulations and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not
allow any lien inferior to the Security Instrument to be perfected against the Property without
Lender's prior written permission.

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss
in addition to the other hazards for which insurance is required by Section 5.

MULTISTATE 1-4 FAMILY RIDER
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3170 1/01                          Page 1 of 3

DocMagic ℯℛ𝑜𝑟𝑚𝑠 800-649-1362
www.docmagic.com

BK: 2997 PG: 250   02/01/2007   MORTGAGE   Image: 16 of 24

VL 2997 PG 265

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted.

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default

MULTISTATE 1-4 FAMILY RIDER
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3170 1/01                    Page 2 of 3

DocMagic €Fσrmαs 800-649-1362
www.docmagic.com

BK: 2997 PG: 250    02/01/2007    MORTGAGE    Image: 17 of 24

VL 2997 PG 266

or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**I.    CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this 1-4 Family Rider.

_____ (Seal)          _____ (Seal)
JOHNNY RAY MOORE                -Borrower                                      -Borrower

_____ (Seal)          _____ (Seal)
                                -Borrower                                      -Borrower

_____ (Seal)          _____ (Seal)
                                -Borrower                                      -Borrower

MULTISTATE 1-4 FAMILY RIDER
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3170 1/01                          Page 3 of 3

DocMagic *CForms* 800-649-1362
www.docmagic.com

27

BK: 2997 PG: 250   02/01/2007   MORTGAGE   Image: 18 of 24

VL 2997 PG 267

Loan Number: 07010417

# ADJUSTABLE RATE RIDER
## Payment Option

THIS ADJUSTABLE RATE RIDER is made this **31st** day of **JANUARY, 2007**,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned
(the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to **MORTGAGE**
**CAPITAL ASSOCIATES, INC., A CALIFORNIA CORPORATION**
(the "Lender") of the same date and covering the property described in the Security Instrument and located at:
     **10 ROSEMARY DRIVE, STRATFORD, CONNECTICUT 06615**

[Property Address]

**THE NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE
AND THE MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT
THAT THE MONTHLY PAYMENT CAN INCREASE OR DECREASE. THE
PRINCIPAL AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT
ORIGINALLY BORROWED, BUT NOT MORE THAN THE LIMIT STATED IN THE
NOTE.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

Lender or anyone who takes the Note by transfer and who is entitled to receive payments under the
Note is called the "Note Holder."

**A.   INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for changes in the interest rate and the monthly payments, as follows:

**2.   INTEREST**
   **(A) Interest Rate**
   Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I will
initially pay interest at a yearly rate of     **2.500 %.** The interest rate I will pay may change.
   The Interest rate required by this Section 2 is the rate I will pay both before and after any default
described in Section 7(B) of the Note.
   **(B) Interest Rate Change Dates**
   The interest rate I will pay may change on the **1st** day of **MARCH, 2007**,
and on that day every month thereafter. Each date on which my interest rate could change is called an
"Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change
Date. Although the interest rate may change monthly, my monthly payment will be recalculated in
accordance with Section 3.
   **(C) Interest Rate Limit**
   My interest rate will never be greater than     **9.950 %.**

PAYMENT OPTION MULTISTATE ADJUSTABLE RATE RIDER
MTA INDEX 02/24/06                                     Page 1 of 5

DocMagic eForms 800-649-1362
www.docmagic.com

28

Uspen.rfs

VL 2997 PG 268

**(D) Index**

Beginning with the first Interest Rate Change Date, my adjustable interest rate will be based on an Index. The "Index" is the "Twelve-Month Average" of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (h.15)" (the "Monthly Yields"). The Twelve Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12. The most recent Index figure available as of the date 15 days before each Interest Rate Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(E) Calculation of Interest Rate Changes**

Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding THREE AND 400/1000 percentage point(s) ( 3.400 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limit stated in Section 2(C) above, the result of this addition will be my new interest rate until the next Interest Rate Change Date.

**3.   PAYMENTS**

**(A) Time and Place of Payments**

I will make a payment every month.

I will make my monthly payments on the 1st day of each month beginning on MARCH 1, 2007 . I will make these payments every month until I have paid all the Principal and interest and any other charges that I may owe under the Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on FEBRUARY 1, 2037 , I still owe amounts under the Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 11150 WEST OLYMPIC BOULEVARD, #1160, WEST LOS ANGELES, CALIFORNIA 90064 or at a different place if required by the Note Holder.

**(B) Minimum Payment; Amount of My Initial Monthly Payments**

My "Minimum Payment" is the minimum amount the Note Holder will accept for my monthly payment, which the Note Holder will determine in accordance with this Section 3(B), or Section 3(D), 3(F) or 3(G), below, as applicable.

Each of my initial Minimum Payments will be in the amount of U.S. $ 1,054.97 until a new Minimum Payment is required as provided below.

**(C) Payment Change Dates**

My Minimum Payment may change as required by Section 3(D) below beginning on the 1st day of MARCH, 2008 , and on that day every 12th month thereafter. Each of these dates is called a "Payment Change Date." My Minimum Payment also will change at any time Section 3(F) or 3(G) below requires me to pay a different amount.

I will pay at least the amount of my new Minimum Payment each month beginning on each Payment Change Date or as provided in Section 3(F) or 3(G) below.

PAYMENT OPTION MULTISTATE ADJUSTABLE RATE RIDER
MTA INDEX 02/24/06                          Page 2 of 5

DocMagic @Forms 800-649-1362
www.docmagic.com

BK: 2997 PG: 250   02/01/2007   MORTGAGE   Image: 20 of 24

VL 2997 PG 269

**(D) Calculation of Monthly Payment Changes**

Before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Payment Change Date in full on the Maturity Date in substantially equal installments at the interest rate effective during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment."

Unless Section 3(F) or 3(G) below requires me to pay a different amount, my new Minimum Payment that will be effective on a Payment Change Date will be in the amount of the Full Payment, except that my new Minimum Payment will be limited to an amount that will not be more than 7.5% greater than the amount of my last Minimum Payment due before the Payment Change Date (this limitation is called the "Payment Change Cap"). The Payment Change Cap applies only to the Principal and interest payment and does not apply to any escrow payments the Note Holder may require under the Security Instrument.

**(E) Additions to My Unpaid Principal**

My monthly payment could be less than or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment date in full on the Maturity Date in substantially equal payments. For each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid Principal. The Note Holder also will add interest on the amount of this difference to my unpaid Principal each month. The interest rate on the interest added to Principal will be the rate required by Section 2 above. For each month that my monthly payment is greater than the interest portion, the Note Holder will apply the payment as provided in Section 3(A).

**(F) Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid Principal may never exceed a maximum amount equal to 115% of the Principal amount I originally borrowed. Because of my paying only limited monthly payments, the addition of unpaid interest to my unpaid Principal under Section 3(E) above could cause my unpaid Principal to exceed that maximum amount when interest rates increase. In that event, on the date that my paying my monthly payment would cause me to exceed that limit, I will instead pay a new monthly payment in an amount that would be sufficient to repay my then unpaid Principal in full on the Maturity Date in substantially equal installments at the interest rate effective during the preceding month, regardless of the Payment Change Cap. This amount will be my new Minimum Payment. This means that my Minimum Payment may change more frequently than annually. This new Minimum Payment amount will remain in effect until at least the next regular Payment Change Date, unless another recalculation of my Minimum Payment is required by this Section prior to such Payment Change Date.

**(G) Required Full Payment**

Regardless of the Payment Change Cap, on the  fifth  Payment Change Date and on each succeeding fifth Payment Change Date thereafter, I will begin paying the Full Payment as my Minimum Payment until my monthly payment changes again. I also will begin paying at least the Full Payment as my Minimum Payment on the final Payment Change Date.

**(H) Payment Options**

After the first Interest Rate Change Date, each month the Note Holder may provide me with up to three additional payment options (in addition to the Minimum Payment) that are greater than the Minimum Payment, which are called "Payment Options." I may be given the following Payment Options:

      (i)    **Interest Only Payment:** the amount that would pay the interest portion of the monthly payment at the current interest rate. The Principal balance will not be decreased by this Payment Option.

PAYMENT OPTION MULTISTATE ADJUSTABLE RATE RIDER
MTA INDEX  02/24/06              Page 3 of 5

DocMagic *Forms* 800-649-1362
www.docmagic.com

BK: 2997 PG: 250   02/01/2007   MORTGAGE   Image: 21 of 24

VL 2997PG 270

(II) **Fully Amortized Payment:** the amount necessary to pay the loan off (including all Principal and interest) at the Maturity Date in substantially equal installments. This Payment Option is calculated on the assumption that the current interest rate will remain in effect until the loan is paid in full, however, the current interest rate may in fact change every month.

(III) **15 Year Amortized Payment:** the amount necessary to pay the loan off (including all Principal and interest) within a fifteen (15) year period from the first payment due date in substantially equal installments. This Payment Option is calculated on the assumption that the current rate will remain in effect until the loan is paid in full, however, the current interest rate may in fact change every month.

Payment Options will only be available if they are greater than the Minimum Payment.

(I) **Failure to Make Adjustments**

If for any reason the Note Holder fails to make an adjustment to the interest rate or payment amount as described herein, regardless of any notice requirement, I agree the Note Holder may, upon discovery of such failure, then make the adjustment as if they had been made on time. I also agree not to hold the Note Holder responsible for any damages to me that may result from the Note Holder's failure to make the adjustment and to let the Note Holder, at its option, apply any excess monies that I may have paid to partial Prepayment of unpaid Principal.

4. **NOTICE OF CHANGES**

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

B. **TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

PAYMENT OPTION MULTISTATE ADJUSTABLE RATE RIDER
MTA INDEX 02/24/06                                          Page 4 of 5

DocMagic €Forms 800-649-1362
www.docmagic.com

31

VL 2997 PG 271

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.


_____ (Seal)          _____ (Seal)
JOHNNY RAY MOORE        -Borrower                            -Borrower


_____ (Seal)          _____ (Seal)
                        -Borrower                            -Borrower


_____ (Seal)          _____ (Seal)
                        -Borrower                            -Borrower


PAYMENT OPTION MULTISTATE ADJUSTABLE RATE RIDER
MTA INDEX 02/24/06                    Page 5 of 5

DocMagic eForms 800-649-1362
www.docmagic.com

32

Utopean.rtf

VL 2997PG 272

# PREPAYMENT RIDER

Loan Number: 07010417

Date: JANUARY 31, 2007

Borrower(s): JOHNNY RAY MOORE

THIS PREPAYMENT RIDER (the "Rider") is made this 31st  day of JANUARY , 2007 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure repayment of Borrower's promissory note (the "Note") in favor of MORTGAGE CAPITAL ASSOCIATES, INC., A CALIFORNIA CORPORATION

("Lender").  The Security Instrument encumbers the Property more specifically described in the Security Instrument and located at

10 ROSEMARY DRIVE, STRATFORD, CONNECTICUT 06615
[Property Address]

ADDITIONAL COVENANTS.  In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A.    PREPAYMENT CHARGE**
The Note provides for the payment of a prepayment charge as follows:

**5  . BORROWER'S RIGHT TO PREPAY; PREPAYMENT CHARGE**
I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment."  When I make a Prepayment, I will tell the Note Holder in writing that I am doing so.  I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under the Note.  However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note.  If I make a partial Prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to those changes.

If the Note contains provisions for a variable interest rate, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.  If this Note provides for a variable interest rate or finance charge, and the interest rate or finance charge at any time exceeds the legal limit under

MULTISTATE PREPAYMENT RIDER
6/03

DocMagic €Ferms  800-649-1362
www.docmagic.com

BK: 2997 PG: 250  02/01/2007  MORTGAGE  Image: 24 of 24

VL 2997PG 273

which a Prepayment penalty is allowed, then the Note Holder's right to assess a Prepayment penalty will be determined under applicable law.

If within TWENTY-FOUR ( 24 ) months from the date the Security Instrument is executed I make a full Prepayment or one or more partial Prepayments, and the total of all such Prepayments in any 12-month period exceeds twenty percent (20%) of the original Principal amount of the loan, I will pay a Prepayment charge in an amount equal to SIX ( 6 ) months' advance interest on the amount by which the total of my Prepayments within any 12-month period exceeds twenty percent (20%) of the original Principal amount of the loan.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Rider.

_____ (Seal)          _____ (Seal)
JOHNNY RAY MOORE          -Borrower                          -Borrower


_____ (Seal)          _____ (Seal)
               -Borrower                                     -Borrower


_____ (Seal)          _____ (Seal)
               -Borrower                                     -Borrower


FEB 0 1 2007
Received for record _____
At 10:44 AM , and recorded by me
_____
Patricia P. Ulaswaki, Stratford Town Clerk

MULTISTATE PREPAYMENT RIDER
6/03                          Page 2 of 2          DocMagic 800-649-1362
                                                   www.docmagic.com

34

# EXHIBIT B.

RETURN DATE: JULY 31, 2018 : SUPERIOR COURT

JPMORGAN CHASE BANK, NATIONAL ASSOCIATION : JUDICIAL DISTRICT OF
: FAIRFIELD

V. : AT BRIDGEPORT

JOHNNY RAY MOORE : JULY 6, 2018

## COMPLAINT

1. The Plaintiff, JPMorgan Chase Bank, National Association has an office and place of business with an address of 7757 Bayberry Road, Jacksonville, FL 32256.

2. At all times complained of herein, the Defendant(s), Johnny Ray Moore, owned real property situated in the Town of Stratford, County of Fairfield and State of Connecticut known as 10 Rosemary Drive, Stratford, Connecticut, (hereinafter the "Property") being more particularly described in Schedule A attached hereto and made a part hereof

3. On or about January 31, 2007, the Defendant(s), Johnny Ray Moore, executed and delivered to Mortgage Capital Associates, Inc., a Note (the "Note") for a loan in the original principal amount of $267,000.00. Said loan was affected by a loan modification agreement dated January 23, 2013. Said loan modification had an effective date of February 1, 2013.

4. On said date to secure said Note the Defendant(s), Johnny Ray Moore, did execute and deliver to Mortgage Electronic Registration Systems, Inc., as nominee for Mortgage Capital Associates, Inc., a Mortgage on the Property. Said Mortgage was dated January 31, 2007 and recorded February 1, 2007 in

File: 002881F02

Volume 2997 at Page 250 of the Stratford Land Records. Said Mortgage was assigned to JPMorgan Chase Bank, National Association by virtue of an Assignment of Mortgage dated October 13, 2009 and recorded April 14, 2010 in Volume 3373 at Page 97 of the Stratford Land Records. The Plaintiff, JPMorgan Chase Bank, National Association is the holder of said Note.

5. Said Note is in default and the Plaintiff, JPMorgan Chase Bank, National Association as the holder of said Note has elected to accelerate the balance due on said Note, to declare said Note to be due in full and to foreclose the Mortgage securing said Note.

6. The Plaintiff has provided written notice in accordance with the Note and Mortgage to the Defendant(s) of the default under the Note and Mortgage, but said Defendant(s) have failed and neglected to cure the default. The Plaintiff has elected to accelerate the balance due on said Note, to declare said Note to be due in full and to foreclose the Mortgage securing said Note.

7. The following liens or encumbrances claim to have an interest in the Property which liens or encumbrances are prior in right to the Mortgage herein:

a. The Town/City of Stratford may claim an interest in the Property by virtue of inchoate liens for real estate taxes.

b. Town of Stratford claims an interest in the Property by virtue of a Sewer Lien in the amount of $400.00 dated May 5, 2015 and recorded on May 6, 2015 in Volume 3872 at Page 213 of the Stratford Land Records.

File: 002881F02

37

c. Town of Stratford claims an interest in the Property by virtue of a Sewer Lien in the amount of $450.00 dated May 16, 2016 and recorded on May 16, 2016 in Volume 3972 at Page 197 of the Stratford Land Records.

d. Town of Stratford claims an interest in the Property by virtue of a Sewer Lien in the amount of $396.00 dated May 8, 2017 and recorded on May 8, 2017 in Volume 4076 at Page 208 of the Stratford Land Records.

e. Town of Stratford claims an interest in the Property by virtue of a Sewer Lien in the amount of $396.00 dated May 8, 2018 and recorded on May 8, 2018 in Volume 4173 at Page 67 of the Stratford Land Records.

8. There are no liens or encumbrances claiming to have an interest in the Property which liens or encumbrances are subsequent in right to the Mortgage herein.

9. The Defendant(s) Johnny Ray Moore is the owner of the equity of redemption of the Property and, on information and belief, is in possession of the Property

10. The Plaintiff, JPMorgan Chase Bank, National Association caused a Lis Pendens to be recorded on the Land Records of the Town of Stratford.

File: 002881F02

WHEREFORE, the plaintiff claims:

1.    Foreclosure of the Mortgage;
2.    Foreclosure of Mortgage pursuant to Conn. Gen. Stat. Sec 49-17;
3.    Possession of the Property;
4.    A reasonable attorney's fee (unless same has been precluded by virtue of a Bankruptcy filing);
5.    Interest (unless same has been precluded by virtue of a Bankruptcy filing);
6.    Costs of suit (unless same has been precluded by virtue of a Bankruptcy filing);
7.    Deficiency Judgment against the makers of, or obligors on, the Note described herein, and/or their Estate, if deceased (unless same has been precluded by virtue of a Bankruptcy filing); and
8.    Such other and further relief as the Court may deem just and equitable

Notice is hereby given to the Defendant(s) that the Plaintiff intends to seek satisfaction of any

judgment rendered in its favor in this action out of any debt accruing to said Defendant(s) by reason of

their personal services, (unless same has been precluded by virtue of a Bankruptcy filing).

Dated at Hartford, Connecticut on July 6, 2018.

Plaintiff

By: _____

Heather M. McRoberts
McCalla Raymer Leibert Pierce, LLC
50 Weston Street
Hartford, CT 06120
860-808-0606
Its Attorneys
Juris No. 101589

File: 002881F02

39

| | |
|---|---|
| RETURN DATE: JULY 31, 2018 | : SUPERIOR COURT |
| JPMORGAN CHASE BANK, NATIONAL ASSOCIATION | : JUDICIAL DISTRICT OF : FAIRFIELD |
| V. | : AT BRIDGEPORT |
| JOHNNY RAY MOORE | : JULY 6, 2018 |

## INFORMATION RELATING TO "VALIDATION NOTICE"

This Writ, Summons and Complaint are legal documents used to commence a lawsuit with regards to the debt referenced within them. You must follow the instructions provided therein should you wish to preserve your interests in the suit, even if you dispute the validity or the amount of the debt. As lawyers, this office may file papers in the suit according to the Statutes, Rules of Court and Standing Orders in Connecticut. The "Validation Notice" which has been or will be sent to the borrower(s) ("consumers") in no way alters their rights or obligations with respect to this lawsuit. If you are the borrower ("consumer"), and if you notify us that the debt or any portion thereof is disputed, or if you request proof of the debt or the name and address of the original creditor within the thirty (30) day time period of the validation notice, we will stop our collection efforts including this foreclosure suit until we mail the requested information to you.

File: 0028811-02

40

RETURN DATE: JULY 31, 2018     : SUPERIOR COURT

JPMORGAN CHASE BANK, NATIONAL ASSOCIATION : JUDICIAL DISTRICT OF
                    : FAIRFIELD

V.                  : AT BRIDGEPORT

JOHNNY RAY MOORE         : JULY 6, 2018

### STATEMENT OF AMOUNT IN DEMAND

   The amount, legal interest, or property in demand is not less than $15,000.00, exclusive of

interest and costs.

             Plaintiff

             By:

              Heather M. McRoberts
              McCalla Raymer Leibert Pierce, LLC
              50 Weston Street
              Hartford, CT 06120
              860-808-0606
              Its Attorneys
              Juris No. 101589

File 002881F02

# SCHEDULE A

## PROPERTY DESCRIPTION

All that certain piece or parcel of land, together with the buildings and improvements thereon, situated in the Town of Stratford, County of Fairfield and State of Connecticut, shown as Lot 1, on map of "Subdivision of Bard's Manor Elm Street Stratford Conn" made by Codespoti & Associates, Stratford, Conn., dated August 8, 1977, Scale 1" = 40', on file in the Stratford Town Clerk's Office, bounded:

Northerly:    On land now or formerly of Deakins & Bosch, 112.00 feet;
Easterly:     On Lot 2, as shown on said map, 95.89 feet;
Southerly:    On Rosemary Drive, 112.07 feet;
Westerly:     On Elm Street, 89.96 feet.

File: 002881F02

# EXHIBIT *C*.

**STATE OF CONNECTICUT** }
**COUNTY OF FAIRFIELD** } ss:

# STRATFORD
# OFFICE OF TOWN CLERK

I, Susan M. Pawluk, Town Clerk of said Town, duly APPOINTED and qualified according to law and having custody of the seal of said Town, hereby certify that the annexed instrument is a true copy from the **STRATFORD LAND RECORDS**, and that the original instrument from which said copy is taken recorded in

DESCRIPTION: Lis Pendens
DATE:        7/10/2018
BOOK/PAGE    4189/343

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed the seal of said Town of Stratford this  6th day of June, 2019                          .

Number of Pages  3

SUSAN M. PAWLUK
Town Clerk
Town of STRATFORD

44

Rec # 20186640

**Bk: 4189  Pg: 343**
07/10/2018   10:28:24 AM
3 Pages
LIS PENDENS

Susan M. Pawluk, Town Clerk

RETURN DATE: JULY 31, 2018        : SUPERIOR COURT

JPMORGAN CHASE BANK, NATIONAL ASSOCIATION    : JUDICIAL DISTRICT OF
       : FAIRFIELD

V.        : AT BRIDGEPORT

JOHNNY RAY MOORE        : JULY 6, 2018

## LIS PENDENS

Notice is hereby given of the pendency of a civil action between the above-named Plaintiff and against Johnny Ray Moore, by Writ dated July 6, 2018, and made returnable to the Superior Court for the Judicial District of Fairfield at Bridgeport on July 31, 2018 which action is brought, inter alia, to foreclose a certain mortgage from the Defendant(s), Johnny Ray Moore to Mortgage Electronic Registration Systems, Inc., as nominee for Mortgage Capital Associates, Inc., which mortgage was dated January 31, 2007 and recorded February 1, 2007 in Volume 2997 at Page 250 of the Stratford Land Records. Said Mortgage was assigned to JPMorgan Chase Bank, National Association by virtue of an Assignment of Mortgage dated October 13, 2009 and recorded April 14, 2010 in Volume 3373 at Page 97 of the Stratford Land Records.

In said action, the following items are claimed:

1.     Foreclosure of the Mortgage;
2.     Foreclosure of Mortgage pursuant to Conn. Gen. Stat. Sec 49-17;
3.     Possession of the Property;
4.     A reasonable attorney's fee (unless same has been precluded by virtue of a Bankruptcy filing);
5.     Interest (unless same has been precluded by virtue of a Bankruptcy filing);
6.     Costs of suit (unless same has been precluded by virtue of a Bankruptcy filing);

File: 002881F02

45

7.  Deficiency Judgment against the makers of, or obligors on, the Note described herein, and/or their Estate, if deceased (unless same has been precluded by virtue of a Bankruptcy filing);

8.  Such other and further relief as the Court may deem just and equitable

The property the plaintiff seeks an interest in and to is located in the Town of Stratford, County of Fairfield and State of Connecticut, and is known as 10 Rosemary Drive, Stratford, CT and is more particularly bounded and described as set forth in Schedule A attached hereto.

Dated at Hartford, Connecticut on July 6, 2018.

Plaintiff

By: _____

Heather M. McRoberts
McCalla Raymer Leibert Pierce, LLC
50 Weston Street
Hartford, CT 06120
860-808-0606
Its Attorneys
Juris No. 101589

File: 002881F02

46

# SCHEDULE A

## PROPERTY DESCRIPTION

All that certain piece or parcel of land, together with the buildings and improvements thereon, situated in the Town of Stratford, County of Fairfield and State of Connecticut, shown as Lot 1, on map of "Subdivision of Bard's Manor Elm Street Stratford Conn", made by Codespoti & Associates, Stratford, Conn., dated August 8, 1977, Scale 1" = 40', on file in the Stratford Town Clerk's Office, bounded:

Northerly:     On land now or formerly of Deakins & Beach, 112.00 feet;
Easterly:      On Lot 2, as shown on said map, 95.80 feet;
Southerly:     On Rosemary Drive, 112.07 feet;
Westerly:      On Elm Street, 89.96 feet.

RECEIVED FOR RECORD AT STRATFORD, CT
7/10/2018      10:28:24 AM

*Susan M. Pollock*

Stratford Town Clerk

LIS PENDENS
4189/343

File: 002881F02

*47*

# EXHIBIT _D_.

**STATE OF CONNECTICUT** }
**COUNTY OF FAIRFIELD** }  ss:

# STRATFORD
## OFFICE OF TOWN CLERK

I, Susan M. Pawluk, Town Clerk of said Town, duly APPOINTED and qualified according to law and having custody of the seal of said Town, hereby certify that the annexed instrument is a true copy from the **STRATFORD LAND RECORDS**, and that the original instrument from which said copy is taken recorded in

DESCRIPTION:  Assignment

DATE:  4/14/2010

BOOK/PAGE  3373/97

**IN TESTIMONY WHEREOF**, I have hereunto set my hand and affixed the seal of said Town of Stratford this 6th day of June, 2019

Number of Pages 1

SUSAN M. PAWLUK
Town Clerk
Town of STRATFORD

49

BK: 3373 PG: 97   04/14/2010   ASSIGNMENT   Image: 1 of 1

After recording please return to:
HUNT LEIBERT JACOBSON PC
50 Weston Street
Hartford CT 06120

VL3373PG097

RECEIVED FOR RECORD
SUSAN M. PAWL...

2010 APR 14 PM 12: 55

STRATFORD LAND RECORD
ATTEST TOWN CLERK

## ASSIGNMENT OF MORTGAGE

POOL NUMBER_____

63

KNOW YE THAT **Mortgage Electronic Registration Systems, Inc. as Nominee for Mortgage Capital Associates, Inc.** ( Assignor"), having an office and place of business at 3300 SW 34th Avenue, Suite 101, Ocala, Florida 34474 ("Assignee") for the consideration of One Dollar and other valuable considerations, does hereby assign to **JPMorgan Chase Bank, National Association** ("Assignee"), having an address of 73 North Green Valley Parkway, Henderson, NV 89014, its successors, and assigns forever, all the right, title, interest, claim, and demand whatsoever as the said Assignor has or ought to have in or to a certain mortgage from Johnny Ray Moore to Mortgage Electronic Registration Systems, Inc. as Nominee for Mortgage Capital Associates, Inc. dated January 31, 2007 and recorded on February 01, 2007 in Volume 2997 at Page 250 of the Stratford Land Records, in or to the property described in said mortgage deed situated in the Town of Stratford, County of Fairfield and State of Connecticut, without warranty or representation by, or recourse to, said Assignor.

TO HAVE AND TO HOLD the premises, with all the appurtenances, unto the said Assignee, its successors and assigns forever, so that neither the Assignor nor its successors, nor any other person under it or them shall hereafter have any claim, right or title in or to the premises, or any part thereof; but therefrom it is and they are by these presents forever barred and secluded.

IN WITNESS WHEREOF, on the ___13th___ day of ___OCTOBER_____, 2009, said corporation has caused this deed to be executed and delivered, and its corporate seal to be hereto affixed in its behalf by _____Barbara Hindman_____, who is duly authorized and empowered.

Signed, sealed and delivered
In the presence of:

MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC. AS
NOMINEE FOR MORTGAGE CAPITAL
ASSOCIATES, INC.

_____mamumo_____
i  Nina C. Munoz

By _Barbara Hindman_

Its ___Vice President_____

STATE OF __Florida_____  :
                                        : SS.
COUNTY OF _Duval_____  :

On this _10th_ day of _OCTOBER_____, 2009, before me personally came Barbara Hindman _____ to me known, who being by me duly sworn, did depose and say that he/she is a _Vice President_____ of MERS, Inc., which executed the above instrument: that he/she knows the seal of said corporation: that the seal affixed to said instrument is such corporate seal, that it was so affixed by order of the Board of Directors of said corporation, and that he/she signed his/her name thereto by means of electronic process by like order acknowledged.

_Rose Hunter_
Notary Public
My Commission Expires:

ROSE HUNTER
Notary Public - State of Florida
My Comm. Expires Feb 1, 2013
Commission # DD 856913

**PROPERTY:**
10 Rosemary Drive
Stratford, CT 06615
Moore, Johnny Ray
File 03668-04474

Received for record   APR 1 4 2010
At _12:55pm_ and recorded by me
_Susan M. Pawluk_
Susan M. Pawluk, Town Clerk
Stratford

*03668-04474$8*

50

# EXHIBIT _E._

# SUMMONS - CIVIL

JD-CV-1 Rev. 4-16
C.G.S. §§ 51-346, 51-347 51-349, 51-350 52-45a,
52-48 52-259, P.B. §§ 3-1 through 3-21, 8-1, 10-13

See other side for instructions



STATE OF CONNECTICUT
**SUPERIOR COURT**
www.jud.ct.gov

☐ ""X"" if amount, legal interest or property in demand, not including interest and costs is less than $2,500.

☐ ""X"" if amount, legal interest or property in demand, not including interest and costs is $2,500 or more.

☒ ""X"" if claiming other relief in addition to or in lieu of money or damages

TO: Any proper officer; BY AUTHORITY OF THE STATE OF CONNECTICUT, you are hereby commanded to make due and legal service of this Summons and attached Complaint.

| Address of court clerk where writ and other papers shall be filed *(Number, street, town and zip code)* (C.G.S. §§ 51-346, 51-350) | Telephone number of clerk *(with area code)* | Return Date *(Must be a Tuesday)* | | |
|---|---|---|---|---|
| 1061 Main Street, Bridgeport, CT 06604 | 203-579-6527 | July | 31 | 2018 |
| | | Month | Day | Year |

| ☒ Judicial District | ☐ G.A. Number | At *(Town in which writ is returnable)* (C.G.S. §§ 51-346, 51-349) | Case type code *(See list on page 2)* | |
|---|---|---|---|---|
| ☐ Housing Session | | Bridgeport | Major   P | Minor:   00 |

## For the Plaintiff(s) please enter the appearance of:

| Name and address of attorney, law firm or plaintiff if self represented *(Number, street, town and zip code)* | Juris number *(to be entered by attorney only)* |
|---|---|
| McCalla Raymer Leibert Pierce, LLC, 50 Weston Street, Hartford, CT 06120 | 101589 |

| Telephone number *(with area code)* | Signature of Plaintiff *(if self-represented)* |
|---|---|
| (860) 808-0606 | |

| The attorney or law firm appearing for the plaintiff, or the plaintiff if self-represented, agrees to accept papers (service) electronically in this case under Section 10-13 of the Connecticut Practice Book | ☒ Yes   ☐ No | Email address for delivery of papers under Section 10-13 *(if agreed to)* ctcourtnotices@mccalla.com |
|---|---|---|

| Number of Plaintiffs: 1 | Number of Defendants: 1 | ☐ Form JD-CV-2 attached for additional parties |
|---|---|---|

| Parties | | Name *(Last, First, Middle Initial)* and Address of Each party *(Number; Street; P.O. Box; Town; State; Zip; Country, if not USA)* | |
|---|---|---|---|
| First Plaintiff | Name: Address: | JPMorgan Chase Bank, National Association 7757 Bayberry Road, Jacksonville, FL 32256 | P-01 |
| Additional Plaintiff | Name: Address: | | P-02 |
| First Defendant | Name: Address: | Moore , Johnny Ray 15 Sachem Drive, Shelton, CT 06484-1756 | D-01 |
| Additional Defendant | Name: Address: | | D-02 |
| Additional Defendant | Name: Address: | | D-03 |
| Additional Defendant | Name: Address: | | D-04 |

## Notice to Each Defendant

1. **YOU ARE BEING SUED.** This paper is a Summons in a lawsuit. The complaint attached to these papers states the claims that each plaintiff is making against you in this lawsuit.
2. To be notified of further proceedings, you or your attorney must file a form called an ""Appearance"" with the clerk of the above-named Court at the above Court address on or before the second day after the above Return Date. The Return Date is not a hearing date. You do not have to come to court on the Return Date unless you receive a separate notice telling you to come to court.
3. If you or your attorney do not file a written ""Appearance"" form on time, a judgment may be entered against you by default. The ""Appearance"" form may be obtained at the Court address above or at www.jud.ct.gov under ""Court Forms.""
4. If you believe that you have insurance that may cover the claim that is being made against you in this lawsuit, you should immediately contact your insurance representative. Other action you may have to take is described in the Connecticut Practice Book which may be found in a superior court law library or on-line at www.jud.ct.gov under ""Court Rules.""
5. If you have questions about the Summons and Complaint, you should talk to an attorney quickly. The Clerk of Court is not allowed to give advice on legal questions.

| Signed *(Sign and "X" proper box)* | ☒ Commissioner of the Superior Court | Name of Person Signing at Left | Date signed |
|---|---|---|---|
| | ☐ Assistant Clerk | Heather M. McRoberts | 07/06/2018 |

| If this Summons is signed by a Clerk | For Court Use Only |
|---|---|
| a. The signing has been done so that the Plaintiff(s) will not be denied access to the courts. b. It is the responsibility of the Plaintiff(s) to see that service is made in the manner provided by law. c. The Clerk is not permitted to give any legal advice in connection with any lawsuit. d. The Clerk signing this Summons at the request of the Plaintiff(s) is not responsible in any way for any errors or omissions in the Summons, any allegations contained in the Complaint, or the service of the Summons or Complaint. | File Date |

| I certify I have read and understand the above | Signed *(Self-Represented Plaintiff)* | Date | Docket Number |
|---|---|---|---|

(Page 1 of 2)

52

## Instructions

1. Type or print legibly; sign summons.
2. Prepare or photocopy a summons for each defendant.
3. Attach the original summons to the original complaint, and attach a copy of the summons to each copy of the complaint. Also, if there are more than 2 plaintiffs or more than 4 defendants prepare form JD-CV-2 and attach it to the original and all copies of the complaint.
4. After service has been made by a proper officer, file original papers and officer's return with the clerk of court.
5. Do not use this form for the following actions:

   (a) Family matters (for example divorce, child support, custody, paternity, and visitation matters)
   (b) Summary Process actions
   (c) Applications for change of name
   (d) Probate appeals
   (e) Administrative appeals

   (f) Proceedings pertaining to arbitration
   (g) Any actions or proceedings in which an attachment, garnishment or replevy is sought
   (h) Entry and Detainer proceedings
   (i) Housing Code Enforcement actions

---

### ADA NOTICE

The Judicial Branch of the State of Connecticut complies with the Americans with Disabilities Act (ADA). If you need a reasonable accommodation in accordance with the ADA, contact a court clerk or an ADA contact person listed at www.jud.ct.gov/ADA.

---

## Case Type Codes

| Major Description | Codes Major/ Minor | Minor Description | Major Description | Codes Major/ Minor | Minor Description |
|---|---|---|---|---|---|
| Contracts | C 00 | Construction - All other | Property | P 00 | Foreclosure |
| | C 10 | Construction - State and Local | | P 10 | Partition |
| | C 20 | Insurance Policy | | P 20 | Quiet Title/Discharge of Mortgage or Lien |
| | C 30 | Specific Performance | | P 30 | Asset Forfeiture |
| | C 40 | Collections | | P 90 | All other |
| | C 90 | All other | | | |
| Eminent Domain | E 00 | State Highway Condemnation | Torts (Other than Vehicular) | T 02 | Defective Premises - Private - Snow or Ice |
| | E 10 | Redevelopment Condemnation | | T 03 | Defective Premises - Private - Other |
| | E 20 | Other State or Municipal Agencies | | T 11 | Defective Premises - Public - Snow or Ice |
| | E 30 | Public Utilities & Gas Transmission Companies | | T 12 | Defective Premises - Public - Other |
| | E 90 | All other | | T 20 | Products Liability - Other than Vehicular |
| | | | | T 28 | Malpractice - Medical |
| Miscellaneous | M 00 | Injunction | | T 29 | Malpractice - Legal |
| | M 10 | Receivership | | T 30 | Malpractice - All other |
| | M 20 | Mandamus | | T 40 | Assault and Battery |
| | M 30 | Habeas Corpus (extradition, release from Penal Institution) | | T 50 | Defamation |
| | | | | T 61 | Animals - Dog |
| | M 40 | Arbitration | | T 69 | Animals - Other |
| | M 50 | Declaratory Judgment | | T 70 | False Arrest |
| | M 63 | Bar Discipline | | T 71 | Fire Damage |
| | M 66 | Department of Labor Unemployment Compensation Enforcement | | T 90 | All other |
| | M 68 | Bar Discipline - Inactive Status | Vehicular Torts | V 01 | Motor Vehicles* - Driver and/or Passenger(s) vs Driver(s) |
| | M 70 | Municipal Ordinance and Regulation Enforcement | | V 04 | Motor Vehicles* - Pedestrian vs. Driver |
| | M 80 | Foreign Civil Judgments - C.G.S. 52-604 & C.G.S 50a-50 | | V 05 | Motor Vehicles* - Property Damage only |
| | | | | V 06 | Motor Vehicle* - Products Liability Including Warranty |
| | M 83 | Small Claims Transfer to Regular Docket | | V 09 | Motor Vehicle* - All other |
| | M 84 | Foreign Protective Order | | V 10 | Boats |
| | M 90 | All other | | V 20 | Airplanes |
| Housing | H 10 | Housing - Return of Security Deposit | | V 30 | Railroads |
| | H 12 | Housing - Rent and/or Damages | | V 40 | Snowmobiles |
| | H 40 | Housing - Audita Querela/Injunction | | V 90 | All other |
| | H 50 | Housing - Administrative Appeal | | | *Motor Vehicles include cars, trucks, motorcycles, and motor scooters. |
| | H 60 | Housing - Municipal Enforcement | | | |
| | H 90 | Housing - All Other | Wills, Estates and Trusts | W 10 | Construction of Wills and Trusts |
| | | | | W 90 | All other |

JD-CV-1  Rev  4-18 (Back/Page 2)

(Page 2 of 2)

# EXHIBIT F.

54

United States Bankruptcy Court
District of Connecticut

In re:                                                                     Case No. 12-51027-ahws
Johnny Ray Moore                                                           Chapter 7
        Debtor

## CERTIFICATE OF NOTICE

District/off: 0205-5              User: sstaton          Page 1 of 3              Date Rcvd: Feb 04, 2015
                                 Form ID: B18           Total Noticed: 42

Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on
Feb 06, 2015.
```
db         +Johnny Ray Moore,   15 Sachem Drive,   Shelton, CT 06484-1756
cr          American InfoSource LP as agent for Midland Fundin,   PO Box 268941,
            Oklahoma City, OK  73126-8941
cr         +Bank Of America, N.A.,   2380 Performance Dr.,   Richardson, TX 75082-4333
cr         +Bank of America, N.A c/o Prober & Raphael A Law Co,   20750 Ventura Blvd, Suite 100,
            Woodland Hills, CA 91364-6207
dbaty      +Mark M. Kratter,   Kratter & Gustafson, LLC,   71 East Avenue Suite O,   Norwalk, CT 06851-4903
cr         +Shameka Smith,   63 Blohm Street,   Floor 1,   West Haven, CT 06516-5458
cr          Tower Lien, LLC,   P.O. Box 823502,   Philadelphia, Pa  19182-3502
cr         +WPCA Of Bridgeport,   Law Office of Juda J. Epstein,   3543 Main Street, Second Floor,
            Bridgeport, CT 06606-3626
8213526    +Bank of America, N.A,   Linda St. Pierre,   Hunt Leibert Jacobson,   50 Weston Street,
            Hartford, CT 06120-1504
7964598     Bank of New York Mellon,    f/k/a The Bank of New York,   Bank of America,
            Mail Stop TX2-982-03-03,   105 Corporate Drive , PTX-09,   Plano, TX 75024
7872350     Chase,   P.O. Box 46903,   Glendale, CO  80246
8202898    +Christiana Trust, A Division Of Wilmington Savings,   Gerald A. Gordon,
            Hunt Leibert & Jacobson PC,   50 Weston Street,   Hartford, CT 06120-1504
7951400    +JPMorgan Chase Bank, National Association,   700 Kansas Lane,   Attn: Correspondence Mail,
            Mail Code LA4-5555,   Monroe, LA 71203-4774
7875562     JPMorgan Chase Bank, National Association,   Gerald A. Gordon,   Hunt Leibert & Jacobson PC,
            50 Weston Street,   Hartford, CT 06120-1504
8342367    +Johnny Ray Moore,   David G. Volman,   One Trap Falls Road,   Suite 901,
            Shelton, CT 06484-7601
8326678    +PennyMac Holdings ,LLC,   Linda St. Pierre,   Hunt Leibert Jacobson,   50 Weston Street,
            Hartford, CT 06120-1504
8205912    +PennyMac Loan Services, LLC,   c/o Aldridge Connors LLP,   Bankruptcy Department,
            Fifteen Piedmont Center,   3575 Piedmont Road, N.E., Suite 500,   Atlanta, GA 30305-1623
8204813    +PennyMac Loan Services, LLC,   6101 Condor Drive,   Suite 310,   Moorpark, CA 93021-2602
8262004    +Shameka Smith,   63 Blohm Street, 1st Floor,   West Haven ,CT 06516-5458
7952301    +Specialized Loan Servicing, LLC,   Attention Bankruptcy Department,
            8742 Lucent Blvd, Suite 300,   Highlands Ranch, Colorado 80129-2386
7957389    +State of CT, Dept. of Revenue Services,   Maria A. Santos,   Office of the Attorney General,
            55 Elm Street,   Hartford, CT 06106-1752
7948607     State of Connecticut,   Department of Revenue Services,   C&E Division, Bankruptcy Unit,
            25 Sigourney Street,   Hartford, CT 06106-5032
7875551    +The Bank Of New York Mellon Fka,   The Bank of New York, as Trustee,   Andrew S. Cannella,
            Bendett & McHugh, P.C.,   270 Farmington Avenue ,Suite 151,   Farmington, CT 06032-1926
7953685    +The Bank of New York Mellon fka The Bank of New Yo,   c/o Bank of America, N.A.,
            7105 Corporate Drive,   Plano, TX 75024-4100
7972404    +Tower Lien LLC,   Mark L. Bergamo/ The Marcus Law Firm,   275 Brandford Road,
            North Brandford, CT 06471-1337
7972979    +Tower Lien, LLC,   Mark L. Bergamo,   The Marcus Law Firm,   275 Branford Road,
            Branford, CT 06471-1337
8368354    +WPCA of Bridgeport,   Juda J. Epstein,   Law Offices of Juda J. Epstein,   3543 Main Street,
            Second Floor,   Bridgeport, CT 06606-3626

Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.
tr         +EDI: QBHKATZ.COM Feb 04 2015 18:43:00     Barbara H. Katz, Trustee,   57 Trumbull Street,
            New Haven, CT 06510-1004
cr         +EDI: PRA.COM Feb 04 2015 18:44:00     PRA  Receivables Management LLC,   POB 41067,
            Norfolk, VA 23541-1067
8040769    +EDI: ATTWIREBK.COM Feb 04 2015 18:44:00    %AT&T Services, Inc,
            Karen A. Cavagnaro - Lead Paralegal,   One AT&T Way, Room 3A 231,   Bedminster, NJ 07921-2693
7901125     EDI: AIS.COM Feb 04 2015 18:44:00     American InfoSource LP as agent for,
            Midland Funding LLC,   PO Box 268941,   Oklahoma City, OK  73126-8941
7919592    +EDI: ACCE.COM Feb 04 2015 18:43:00     Asset Acceptance LLC,   P.O. Box 2036,
            Warren MI 48090-2036
7951859    +EDI: OPHSUBSID.COM Feb 04 2015 18:43:00     Azurea I, LLC,   c/o Weinstein & Riley, P.S.,
            2001 Western Ave., Ste. 400,   Seattle, WA 98121-3132
7883628     EDI: BANKAMER2.COM Feb 04 2015 18:43:00     FIA CARD SERVICES, N.A.,   PO Box 15102,
            Wilmington, DE 19886-5102
7899320    +EDI: BANKAMER.COM Feb 04 2015 18:43:00     Bank of America, N.A.,   Bankruptcy Department,
            P.O. Box 26012, NC4-105-02-99,   Greensboro, NC 27420-6012
7886702     EDI: DISCOVER.COM Feb 04 2015 18:43:00     Discover Bank, DB Servicing Corporation.,
            PO Box 3025,   New Albany, OH 43054-3025
7980782     EDI: IRS.COM Feb 04 2015 18:43:00     Internal Revenue Service,   P.O. Box  7346,
            Philadelphia, PA 19101-7346
7890585    +EDI: OPHSUBSID.COM Feb 04 2015 18:43:00     Keystone Recovery Partners. LLC Series A,
            c/o Weinstein & Riley,   2001 Western Avenue, Ste 400,   Seattle,WA 98121-3132
7873579     EDI: MERRICKBANK.COM Feb 04 2015 18:43:00     Merrick Bank,   Resurgent Capital Services,
            PO Box 10368,   Greenville, SC 29603-0368
7934483    +EDI: OPHSUBSID.COM Feb 04 2015 18:43:00     Oak Harbor Capital VI, LLC,
            c/o Weinstein & Riley, P.S.,   2001 Western Ave., Ste. 400,   Seattle, WA 98121-3132
```

District/off: 0205-5          User: sstaton          Page 2 of 3          Date Rcvd: Feb 04, 2015
                             Form ID: B18           Total Noticed: 42

Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center
(continued)
7919066          EDI: PRA.COM Feb 04 2015 18:44:00    Portfolio Recovery Associates, LLC,    POB 41067,
                 Norfolk VA 23541
8369819          +E-mail/Text: ustpregion02.nh.ecf@usdoj.gov Feb 04 2015 18:43:19    United States Trustee,
                 150 Court Street, Room 302,    New Haven, Ct 06510-2022
                                                                                      TOTAL: 15

                 ***** BYPASSED RECIPIENTS (undeliverable, * duplicate) *****
cr               Christiana Trust, A Division Of Wilmington Savings
cr               JPMorgan Chase Bank, National Association
cr               PennyMac Holdings, LLC
cr               PennyMac Loan Services, LLC
cr               State of CT, Dept. of Revenue Services
cr               The Bank Of New York Mellon
cr               The Bank of New York Mellon fka The Bank of New Yo
7872349          Bank of America,    Home Loans,    Special Loan Servicing,    P.O. Box 91410-0227
aty*             +Barbara H. Katz, Trustee,    57 Trumbull Street,    New Haven, CT 06510-1004
cr*              +Azurea I, LLC,    c/o Weinstein & Riley, P.S.,    2001 Western Ave., Ste. 400,
                 Seattle, WA 98121-3132
cr*              +Oak Harbor Capital VI, LLC,    c/o Weinstein & Riley, P.S.,    2001 Western Ave., Ste. 400,
                 Seattle, WA 98121-3132
                                                                                      TOTALS: 8, * 3, ## 0

Addresses marked '+' were corrected by inserting the ZIP or replacing an incorrect ZIP.
USPS regulations require that automation-compatible mail display the correct ZIP.

I, Joseph Speetjens, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner
shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.

Meeting of Creditor Notices only (Official Form 9): Pursuant to Fed. R. Bank. P. 2002(a)(1), a notice containing the complete Social Security
Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the
bankruptcy rules and the Judiciary's privacy policies.

Date: Feb 06, 2015                              Signature:   /s/Joseph Speetjens

---

## CM/ECF NOTICE OF ELECTRONIC FILING

The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email)
system on February 4, 2015 at the address(es) listed below:
       Abigail   Hausberg   on behalf of U.S. Trustee    U. S. Trustee USTPREGION02.NH.ECF@USDOJ.GOV
       Ana M. Fidalgo   on behalf of Creditor    The Bank of New York Mellon fka The Bank of New York, as
       Trustee for the Certificateholders of the CWABS Inc., Asset-Backed Certificates, Series 2006-12
       bkecf@bmpc-law.com,   afidalgo@bmpc-law.com
       Ana M. Fidalgo   on behalf of Creditor    JPMorgan Chase Bank, National Association
       bkecf@bmpc-law.com,   afidalgo@bmpc-law.com
       Ana M. Fidalgo   on behalf of Creditor    The Bank Of New York Mellon bkecf@bmpc-law.com,
       afidalgo@bmpc-law.com
       Andrew Cannella   on behalf of Creditor    The Bank Of New York Mellon bkecf@bmpc-law.com
       Andrew Cannella   on behalf of Creditor    The Bank of New York Mellon fka The Bank of New York,
       as Trustee for the Certificateholders of the CWABS Inc., Asset-Backed Certificates, Series
       2006-12 bkecf@bmpc-law.com
       Andrew S. Cannella   on behalf of Creditor    PennyMac Holdings, LLC bkecf@bmpc-law.com
       Barbara H. Katz, Trustee   barbarakatz@snet.net,   bhkatz@ecf.epiqsystems.com
       Barbara H. Katz, Trustee   on behalf of Trustee Barbara H. Katz, Trustee barbarakatz@snet.net,
       bhkatz@ecf.epiqsystems.com
       Brian D. Rich   on behalf of Defendant    JP Morgan Chase Bank, N.A. rich@halloran-sage.com,
       spencer@halloran-sage.com
       David G. Volman   on behalf of Debtor Johnny Ray Moore joni@volmanlaw.com
       Gerald S. Gordon   on behalf of Creditor    JPMorgan Chase Bank, National Association
       ggordon@huntleibert.com
       Gerald A. Gordon   on behalf of Creditor    Christiana Trust, A Division Of Wilmington Savings
       Fund Society, FSB, As Trustee For Normandy Mortgage Loan Trust Trust, Series 2013-18
       ggordon@huntleibert.com
       Juda J. Epstein   on behalf of Creditor    WPCA Of Bridgeport contact@lawofficesjje.com
       Kim L. McCabe   on behalf of U.S. Trustee    U. S. Trustee kim.mccabe@usdoj.gov
       Linda  St. Pierre   on behalf of Creditor    PennyMac Holdings, LLC bankruptcy@huntleibert.com,
       lstpierre@huntleibert.com
       Linda  St. Pierre   on behalf of Creditor    PennyMac Loan Services, LLC
       bankruptcy@huntleibert.com,   lstpierre@huntleibert.com
       Linda  St. Pierre   on behalf of Defendant    Christiana Trust A Division of Wilmington ,Savings
       Fund Society,FBS,as Trustee for Normandy Mortgage Loan Trust,Series 2013-18
       bankruptcy@huntleibert.com,   lstpierre@huntleibert.com

56

District/off: 0205-5          User: sstaton          Page 3 of 3          Date Rcvd: Feb 04, 2015
                             Form ID: B18            Total Noticed: 42

The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email)
system (continued)
          Linda  St. Pierre   on behalf of Creditor    JPMorgan Chase Bank, National Association
          bankruptcy@huntleibert.com,  lstpierre@huntleibert.com
          Linda  St. Pierre   on behalf of Creditor    Bank of America, N.A c/o Prober & Raphael A Law
          Corporation bankruptcy@huntleibert.com,  lstpierre@huntleibert.com
          Linda  St. Pierre   on behalf of Creditor    Bank Of America, N.A. bankruptcy@huntleibert.com,
          lstpierre@huntleibert.com
          Linda  St. Pierre   on behalf of Creditor    Christiana Trust, A Division Of Wilmington Savings
          Fund Society, FSB, As Trustee For Normandy Mortgage Loan Trust Trust, Series 2013-18
          bankruptcy@huntleibert.com,  lstpierre@huntleibert.com
          Linda  St. Pierre   on behalf of Defendant    Selene Finance, LLP bankruptcy@huntleibert.com,
          lstpierre@huntleibert.com
          Linda  St. Pierre   on behalf of Defendant    Penny Mac Loan Services,LLC
          bankruptcy@huntleibert.com,  lstpierre@huntleibert.com
          Linda  St. Pierre   on behalf of Defendant    JP Morgan Chase Bank, N.A.
          bankruptcy@huntleibert.com,  lstpierre@huntleibert.com
          Maria A. Santos   on behalf of Creditor    State of CT, Dept. of Revenue Services
          maria.santos@ct.gov
          Mark L. Bergamo   on behalf of Creditor    Tower Lien, LLC mbergamo@marcuslawfirm.com
          Michael A. Leone   on behalf of Defendant    JP Morgan Chase Bank, N.A. leone@halloran-sage.com
          Molly T. Whiton   on behalf of Trustee Molly T. Whiton mtwhiton@mtwhiton.com
          U. S. Trustee   USTPRegion02.NH.ECF@USDOJ.GOV

                                                                                    TOTAL: 30

I certify that this is a true and correct copy
original which is on file at the Office of the Clerk.

Deputy Clerk. U. S. Bankruptcy Court          6/6/2019
                                              Date

57

B18 (Official Form 18) (12/07)

# United States Bankruptcy Court

District of Connecticut
### Case No. 12–51027
Chapter 7

**In re** Debtor(s) (name(s) used by the debtor(s) in the last 8 years, including married, maiden, trade, and address):
Johnny Ray Moore
15 Sachem Drive
Shelton, CT 06484

Social Security / Individual Taxpayer ID No.:
xxx–xx–8060

Employer Tax ID / Other nos.:

## DISCHARGE OF DEBTOR

It appearing that the debtor is entitled to a discharge,

**IT IS ORDERED:**

The debtor is granted a discharge under section 727 of title 11, United States Code, (the Bankruptcy Code).

BY THE COURT

Dated: 2/4/15

Alan H.W. Shiff
United States Bankruptcy Judge

**SEE THE BACK OF THIS ORDER FOR IMPORTANT INFORMATION.**

B18 (Official Form 18) (12/07) – Cont.

## EXPLANATION OF BANKRUPTCY DISCHARGE
## IN A CHAPTER 7 CASE

This court order grants a discharge to the person named as the debtor. It is not a dismissal of the case and it does not determine how much money, if any, the trustee will pay to creditors.

### Collection of Discharged Debts Prohibited

The discharge prohibits any attempt to collect from the debtor a debt that has been discharged. For example, a creditor is not permitted to contact a debtor by mail, phone, or otherwise, to file or continue a lawsuit, to attach wages or other property, or to take any other action to collect a discharged debt from the debtor. *[In a case involving community property:* There are also special rules that protect certain community property owned by the debtor's spouse, even if that spouse did not file a bankruptcy case.] A creditor who violates this order can be required to pay damages and attorney's fees to the debtor.

However, a creditor may have the right to enforce a valid lien, such as a mortgage or security interest, against the debtor's property after the bankruptcy, if that lien was not avoided or eliminated in the bankruptcy case. Also, a debtor may voluntarily pay any debt that has been discharged.

### Debts That are Discharged

The chapter 7 discharge order eliminates a debtor's legal obligation to pay a debt that is discharged. Most, but not all, types of debts are discharged if the debt existed on the date the bankruptcy case was filed. (If this case was begun under a different chapter of the Bankruptcy Code and converted to chapter 7, the discharge applies to debts owed when the bankruptcy case was converted.)

### Debts That are Not Discharged

Some of the common types of debts which are not discharged in a chapter 7 bankruptcy case are:

a. Debts for most taxes;

b. Debts incurred to pay nondischargeable taxes;

c. Debts that are domestic support obligations;

d. Debts for most student loans;

e. Debts for most fines, penalties, forfeitures, or criminal restitution obligations;

f. Debts for personal injuries or death caused by the debtor's operation of a motor vehicle, vessel, or aircraft while intoxicated;

g. Some debts which were not properly listed by the debtor;

h. Debts that the bankruptcy court specifically has decided or will decide in this bankruptcy case are not discharged;

i. Debts for which the debtor has given up the discharge protections by signing a reaffirmation agreement in compliance with the Bankruptcy Code requirements for reaffirmation of debts; and

j. Debts owed to certain pension, profit sharing, stock bonus, other retirement plans, or to the Thrift Savings Plan for federal employees for certain types of loans from these plans.

This information is only a general summary of the bankruptcy discharge. There are exceptions to these general rules. Because the law is complicated, you may want to consult an attorney to determine the exact effect of the discharge in this case.

EXHIBIT D

| | |
|---|---|
| DOCKET NO.: FBT-CV-18-6076680-S | SUPERIOR COURT |
| JPMORGAN CHASE BANK, NATIONAL ASSOCIATION | JUDICIAL DISTRICT OF FAIRFIELD |
| PLAINTIFF | AT BRIDGEPORT |
| Vs | AUGUST 9, 2019 |
| JOHNNY RAY MOORE | |
| DEFENDANT | |

## MEMORANDUM OF LAW IN SUPPORT OF THE DEFENDANT'S MOTION TO DISMISS THE PLAINTIFF COMPLAINT FOR LACK OF STANDING

### THE ALLEGED FACTS OF THE NAMED PLAINTIFF

On or about July 10, 2018, a cause of action was brought, *inter alia, in personam,* and / or seeking *remedy at law* pursuant to Conn. Stat. Sec. 49-17, to foreclose the Defendant, Johnny Ray Moore herein called the ("Defendant") equitable mortgage title, regarding subject real estate property known as 10 Rosemary Drive, Stratford CT 06615, herein called the ("subject property") to Mortgage Electronic Registration Systems Inc., aka ("MERS").

The action is brought by the law firm of McCalla Raymer Leibert Pierce LLC, (formerly known as Hunt Liebert & Jacobson P.C.) located at 50 Weston Street, Hartford CT 06120. The action names JPMorgan Chase Bank N.A., as Plaintiff, called the ("named Plaintiff). According to the named Plaintiff's Complaint ( see Exhibit B), filed under Doc. No. 126. It is alleged that the Defendant executed and delivered to Mortgage Capital Associates, Inc. a Note at # 3. It is also alleged at #4 that the Defendant delivered to MERS as nominee for Mortgage Capital Associates, Inc. a Mortgage on or about January 31, 2007. It is alleged that the Mortgage (legal title) to the subject property by virtue of an assignment of mortgage recorded on the Land Records was assigned to the named Plaintiff on or about **October 13, 2009** and recorded on the land records on **April 14, 2010**. ( see Exhibit D).

The named Plaintiff claims the Note is in default and as the holder of the Note has elected

1.

to accelerate the balance due and declare the Debt to be due in full and to foreclose the Mortgage securing said Note at # 5 of the Complaint. The named Plaintiff also claims it sent Notice of the Default to the Defendant, but the <u>Defendant has failed and neglected to cure the default at # 6</u>.

The Defendant claims that the named Plaintiff, according to the Complaint seeks the following relief *inter alia*, also known as in *personam* and / or a cause of action seeking *remedy at law* on the debt and not against the subject property *in rem* or at *remedy at equity*.

## I. <u>THE RELIEF SOUGHT BY THE NAMED PLAINTIFF</u>

(1) Foreclosure of the Mortgage; (2) Foreclosure of the Mortgage pursuant to C.G.S. § 49-17; (3) Possession of the Property (4) Attorney fee's (unless same has been precluded by virtue of a Bankruptcy filing) (5) Interest (unless same has been precluded by virtue of a Bankruptcy filing); (6) Cost of suit (unless same has been precluded by virtue of a Bankruptcy filing); (7) Deficiency Judgment against the maker of the Note (unless same has been precluded by virtue of a Bankruptcy filing); (8) Such other and further relief as the Court may deem just and equitable

The named Plaintiff's has also alleged Notice is hereby given to the Defendant of any judgment rendered in its favor (unless same has been precluded by virtue of a Bankruptcy filing).

## II. <u>THE ALLEGED FACTS OF THE DEFENDANT CHALLENGING THE SUFFICENCY OF NAMED PLAINTIFF'S PLEADINGS</u>

(1)   The Defendant never executed and delivered to Mortgage Capital Associates a Note in the amount of $267,000.00 as alleged by the named Plaintiff at # 3, of the Complaint;

(2)   The Defendant never executed and delivered to MERS, as nominee for Mortgage Capital Associates, Inc., a Mortgage as alleged in the Complaint and / or in the Mortgage Deed that was recorded on the land records (see Exhibit A), Doc. No.126;

(3)   The Defendant attest that the named Plaintiff is not the holder of the Note as alleged at #5 of the Complaint and the Defendant also attest that the named Plaintiff was never the owner

2.

and holder in due course of the Note and / or of the Debt pursuant to UCC § 3-302;

(4)   The Defendant attest that the Mortgage was not assigned to the named Plaintiff, as alleged in the Complaint at # 4.  Although an Assignment of the Mortgage was filed on the Land Records,( see Exhibit D), Doc. No. 126;

(5)   The Defendant attest that MERS was never the nominee for Mortgage Capital Associates Inc., as alleged in the Complaint, the Mortgage Deed recorded on the Land Records and declared in the Lis Pendens filed on the Land Records, (see Exhibit C ), Doc. No.126;

(6)   The Defendant attest that there is no evidence that the Note and / or the Debt was assigned to the named Plaintiff by MERS and that the  named Plaintiff has Standing seeking the relief requested in the Complaint;

(7)   The Defendant attest that MERS lack Standing before this Court having commenced the said action to foreclose on the Defendant's Mortgage claiming to be acting on behalf of Mortgage Capital Associates Inc., as it's nominee; when in fact MERS was not.

(8)   The Defendant claims that it is MERS who is actually seeking to foreclose on the Defendant's Mortgage and not the named Plaintiff according to the Lis Pendens filed on the Public Land Records in the Town of Stratford according to the Defendant's ( see Exhibit C).

(9)   The Defendant attest that MERS is not an injured party and has no interest in the Note and / or Debt and has no Standing to foreclose on the Defendant's Mortgage;

(10   The Defendant attest that MERS should have been named in the Writ, Summons and Complaint and is not because of MERS lack of Standing; ( see Exhibit E), Doc. No. 126.

(11)  The Defendant attest that according to C.G.S. § 33-921, MERS is without a certificate of authority to have commenced this action against the Defendant;

(12)  The Defendant attest that the named Plaintiff pursuant C.G.S. § 33-921 is without Standing to act and seek foreclosure of the Defendant's Mortgage on behalf of MERS.

(13)  The Defendant attest that according to C.G.S. § 47-33, the chain of title to the Mortgage

3

( legal title) is broken; and therefore the subject property cannot be foreclosed on.

(14)    The Defendant attest that on February 5, 2015, the Defendant received a Discharge of

Debt under section 727, title 11 of the United States Bankruptcy Code, for which the named

Plaintiff received a copy of the Certificate of Notice ( see Exhibit F), Doc. No. 126;

(15)    The Defendant attest that this action is brought *inter alia*; *in personam;* and / or at *remedy*

*at law* and is commenced in violation of the Defendant's Discharge Injunction pursuant to 11

U.S.C § 524 (a) (1)(2) rendering the Court without jurisdiction or authority to grant any relief *inter*

*alia*; in *personam* and / or at *remedy at law* for which MERS and the named Plaintiff and its

attorney at law  seeks without having Standing before this Court.

(16)    The Defendant claims that the named Plaintiff did not mail to the Defendant a Notice of

Default prior to the acceleration of the alleged Mortgage Debt claimed is owed.

(17)    The Defendant claims that such a Notice of Default, listed in the Non- Uniform

Covenants filed on the Land Record in Volume 2997 Page 260 # 22. ( see Exhibit A), Doc. No.

126, filed with the Court on 07/08/2019, would be in violation of the Defendant's Discharge

Injunction under U.S.C. § 524, because of the personal discharge of this debt the Defendant

received under section 727, of title 11 of the United States Bankruptcy Court on 02/04/2015

(see Exhibit F), Doc. No. 126.

III.                    <u>**THE RELIEF SOUGHT BY THE DEFENDANT**</u>

(1)    The Defendant seeks dismissal of this action with prejudice because there is no evidence

that the named Plaintiff was the owner and holder in due course of the Note and / or Debt prior

to the commencement of the said action and therefore lacks Standing before the Court.

(2)    The Defendant seeks dismissal of this action with prejudice because there is no evidence

that MERS is and was the owner and holder in due course of the Note and / or Debt  prior to the

commencement of the said action and therefore lacks Standing before the Court.

4.

(3)    The Defendant seeks dismissal of this action with prejudice because there is no evidence

that the Note and or Debt was assigned to the named Plaintiff prior to the commencement of

this action.

(4)    The Defendant seeks dismissal of this action because the Mortgage was not assigned by

MERS as Nominee of Mortgage Capital Associates as alleged by the named Plaintiff;

(5)    The Defendant seeks dismissal of this action because the named Plaintiff never sent a

Notice of Default in accordance with the NON-UNIFORM COVENANTS at # 22, at volume 2997

Page 260 of the Mortgage Deed recorded on the Land Records ( see Exhibit A), Doc. No. 126;

(6)    The Defendant seeks dismissal of this action for failure of counsel for the named Plaintiff

to serve a copy of the Lis Pendens upon the Defendant at his usual place of abode, and to file

the Lis Pendens in Court with the Writ, Summons and Complaint depriving the Court of Subject

Matter Jurisdiction.

 (7)    The Defendant seeks dismissal this action with prejudice because the named Plaintiff

lacks Standing to seek foreclosure of the Defendant's Mortgage on behalf of MERS who lack

Standing having no interest in the Note and or Debt.

(8)    The Defendant seeks dismissal of this action because this action was commenced in

violation of the Defendant's discharge Injunction because the Debt has not been reaffirmed

under 11 U.S.C 524 and the creditor's only recourse is an action against the property *in rem*

jurisdiction.

(9)    The Defendant seeks dismissal of this action Pursuant to UCC § 3-302 due to forgery of

signatures regarding the Note and / or to Debt.

(10)   The Defendant seeks dismissal of this action pursuant to C.G.S. § 33-921, because the

named Plaintiff is without authority to act on behalf of MERS to foreclose on the Defendant's

Mortgage in an attempt to circumvent the law.

(11)   The Defendant seeks a declaratory judgment in favor of the release of the mortgage lien because of the named Plaintiff disregard for the Defendant civil rights having brought in action in violation of C.G.S. § 53a-139, see the Defendant Motion to Dismiss with exhibits A-E, filed with the Court and made part of the Record, Doc. No. 126.

(12)   The Defendant has suffered conscionable mental anguish, mental distress, slander of character, liable and judicial prejudice and conspiracy to deprave the Defendant of his constitutional rights to procedural due process and substantive due process and equal protection law the law that the mortgage lien should be released.

## IV.   DEFENDANT'S LEGAL ARGUMENT

The defendant claims that Pursuant to the Connecticut Practice Book (C.P.B.) the rules that govern the Court § 10:33. It is well established that a "*Motion to Dismiss over the Subject Matter Jurisdiction cannot be waived: and whenever it is found after suggestion of the parties or otherwise, that the court lacks jurisdiction of the subject matter, the judicial authority shall dismiss the action.*" " Subject matter jurisdiction involves the authority of the court to adjudicated the type of controversy presented by the action before it... [A] court lacks discretion to consider the merits of a case over which it is without jurisdiction ..." (Internal quotations marks omitted.) *Burton v. Commissioner of Environment Protection*, 291 Conn. 789, 802 (2009). It is the named Plaintiff here in this action that bears the burden of proving its standing and not the Defendant. See *Fort Trumbull Conservancy, LLC v. New London*, 265 Conn. 423 n. 12 (2003). In addition pursuant to C.P.B. § 10-34, of the rules that govern this Court also state that if any motion to dismiss is denied with respect to any jurisdiction issues, the defendant may plead further without waving ones right to contest jurisdiction further.

The Defendant argues where a jurisdictional determination is dependent on the resolution of a critical fatual dispute, it cannot be decided on a motion to dismiss in the absence of an

6.

evidentiary hearing to establish jurisdictional facts, such as for the court to make findings as to the Standing of this named Plaintiff because the Defendant attesting that the named Plaintiff is not the owner and holder in due course of the Note as alleged in the Complaint. See *Conboy v. State,* 292 Conn. 642 (2009) at *Gordon v. H.N.S. Management Co.* 272 Conn. 81, 82, 861 A.2.d 1164 (2004) (" [w]hen issues of fact are necessary to the determination of a court's Page 653 jurisdiction ... due process requires that a trial like hearing be held, in which an opportunity is provided to present evidence and to crossexamine adverse withessess"). An evidentiary hearing is necessary because " a court cannot make a critical factual [jurisdictional] finding based on memoranda and documents submitted by the parties." *Coughlin v. Waterbury,* 61 Conn. App. 310, 315, 763 A.2d 1058 (2001). The Defendant is disputing not only the fact that the named Plaintiff is not the owner and holder of the Note in due course from the making of the Note, but the Mortgage was not assigned as alleged in the Lis Pendnes and Complaint and in accordance to the alleged conveyance of the subject property to the named Plaintiff according the alleged assignment of the Mortgage recorded on the Land Records. MERS lacks Standing to foreclose on the Mortgage because MERS is not the owner and holder in due course of the Note and / or Debt. There is no evidence submitted by the named Plaintiff whereby the Court has made findings otherwise. The Defendant attest that there is no evidence before the Court that the Note and / or Debt was assigned, transferred and / or sold to the named Plaintiff. The Defendant's Mortgage cannot be foreclosed on separate and apart from the Note and / or Debt which was not assigned to the named Plaintiff. The Defendant is disputing that fact that MERS was never the nominee for Mortgage Capital Associates Inc., as alleged in the Mortgage Deed, Complaint and Lis Pendens and the making of the Note and Mortgage represents is fatally flawed and cannot be overlooked by the Court. These are jurisdiction issues that require an evidentiary hearing in order for the trial Court to make its findings and not solely rely on the pleading of the parties.

7.

It has been well established by the State of Connecticut Appellate and Supreme Courts. That once the standing of a plaintiff is challenged by a party, the Defendant, as in this case. The Defendant claims the lower courts must first make material findings of facts as to the standing of the named Plaintiff before any issues of the case can be heard and adjudicated by the Court. If it is found that the named Plaintiff lacks standing before this Court, then the Court is without subject matter jurisdiction to consider the relief sought and must dismiss the action.

Our Appellate Court has ruled in the matter of *DEUTSCHE BANK NATIONAL TRUST COMPANY, Trustee v. Rodney THOMPSON* et al. No. 37362. Decided: March 22, 2016. [T]his court has often stated that the question of subject matter jurisdiction, because it addresses the basic competency of the court, can be raised by any of the parties, or by the court sua sponte, at any time." (Citations omitted; internal quotation marks omitted.) *Peters v. Dept. of Social Services*, 273 Conn. 434, 441–42, 870 A.2d 448 (2005). "A court does not have subject matter jurisdiction to hear a matter unless the plaintiff has standing to bring the action." *Western Boot & Clothing Co. v. L'Enfance Magique, Inc.*, 81 Conn.App. 486, 488, 840 A.2d 574, cert. denied, 269 Conn. 903, 852 A.2d 737 (2004). This means that the mere suggestion by this Defendant challenging the Standing of the named Plaintiff. The trial court must first make findings as to the named Plaintiff's standing. The Court cannot consider any of the pleadings made by the named Plaintiff nor the request for any relief, until the trial Court has [f]irst made findings as to the named Plaintiff's Standing which is being challenged by the Defendant as to the sufficiency of its pleadings. "The issue of standing implicates subject matter jurisdiction and is therefore a basis for granting a motion to dismiss. Practice Book § 10-31 (a)." ( Internal quotation mark omitted.) Id. At 213. See Simons v. Weston P.Z., Superior Court, Judicial District of Stamford – Norwalk, Docket No. FST-CV-10-5013515 ( November 30, 2012 Genvario, J.).

The Defendant is also arguing that this is not an in *rem* procedure before the Court. Nor is it a cause of action at equity.  The Defendant claims that the Connecticut  Supreme Court has ruled in the Matter of *Hartford National Bank and Trust Co. v. David Kotkin, Et Al* (1981). It is well established in the legal profession that plaintiff's are entitled to pursue its **remedy at law on the notes**, or to pursue its **remedy in equity upon the mortgage**, or to **pursue both**. "`A

8.

note and a mortgage given to secure it are separate instruments, executed for different purposes and in this State action for foreclosure of the mortgage and upon the note are regarded and treated, in practice, as separate and distinct causes of action. Although both may be pursued in a foreclosure suit. *Mechanics Bank v. Johnson,* 104 Conn. 696, 701, 134 Atl. 231; *German v. Gallo,* 100 Conn.... [708], 711,124 Atl. 837; *Staples v. Hendrick,* 89 Conn. 100, 93 Atl. 5.' *Atlas Realty Corporation v. House,* 120 Conn. 661, 670, 183 A. 9; *New Haven Savings Bank v. Warner,* 128 Conn. 662, 666, 25 A.2d 50. The Defendant claims that a plaintiff's only remedy is in equity upon the mortgage by seeking to enforce the mortgage lien against the collateral of the subject property for non-payment of the mortgage debt, by way of a foreclosure by sale and must provide proof of purchase of the debt and not just a copy of an alleged note for which the Defendant can also provide ( see Exhibit A). Volume 2997 Page 267 to  Volume 2997 Page 273. This action according to the Lis Pendes is commenced *inter alia at law* or in *personam* or *inter alia* by strict foreclosure, see Doc. No. 112, filed with this Court on 02/05/2019. The Defendant is disputing that this cause of action,  which according to *Hartford National Bank and Trust Co. v. David Kotkin, Et Al* (1981) is a separate and distinct cause of action from seeking remedy at equity by the enforcement of the Mortgage Lien against the collateral of the subject property.

The Defendant attest that he received a personal Discharge of the said mortgage Debt on February 4, 2015.  A certificate of notice of the Defendant's Discharge of Debt was served upon the named Plaintiff as part of the record ( see Exhibit F), Doc. No. 126. The relief that  the named Plaintiff seeks *inter alia,* or in *personam* or at *remedy at law* has been extinguished. See the United States Supreme Court decision in *Johnson v. Home State Bank* 501 U.S. 78 (1991).  "Thus, a bankruptcy discharge extinguishes only one mode of enforcing a claim -- an *in personam* action -- while leaving intact another -- an *in rem* action".  The Defendant claims that this is the reason why the named Plaintiff willfully chose not to serve  a copy of the Lis Pendens upon the Defendant because the Defendant brought the action in *personam* and not *in rem* to enforce the lien against the collateral of the property in seeking collateral relief for  the alleged debt owed.

9.

The Defendant claims it is MERS who is the Mortgagee of Record and the current owner of the Mortgage. Further, the Assignment of Mortgage referenced in the named Plaintiff's Complaint represents an act to commit fraud upon the Court by having the Court to believe that the Mortgage was conveyed to the named Plaintiff when in actuality no such conveyance of the Mortgage to the named Plaintiff has taken place. Even if such an assignment of the Mortgage took place, there was no assignment of the Note which make the assignment a Nullity. Upholding one of our long hold common law principle that an assignment of the mortgage without the note is an nullity see United States Supreme Court decision in *Carpenter v Logan.* Our Appellate Court has concluded, therefore, that the legislature did not intend to permit the holder of the mortgage, in this case MERS, and / or the named Plaintiff the right to foreclose on the Defendant's Mortgage without having been assigned the note, and / or the Debt. (Citations omitted; internal quotation marks omitted.) *See Fleet National Bank v. Nazareth,* 75 Conn. App. 791 – Conn: Appellate Court (2003). The Defendant attest that counsel for the named Plaintiff is fully aware that MERS lacks Standing before this Court and is not entitled to foreclose on the Defendant's Mortgage.

This evidence can be found in Connecticut Foreclosures which is an Attorney's Manual of Practice and Procedure, which in essence teaches attorney's how to circumvent what is called the MERS-Nazareth dilemma. This writing by Denis R. Caron ( the owner of a Title Company) and Geoffrey K. Milne an senior partner at the Law Firm of McCalla Raymer Liebert Pierce LLC) can be found in the 4th of Connecticut Foreclosures on page 575. Where I quote " The benefit of naming the noteholder and MERS as co-plaintiffs avoids the risk that a borrower may successfully challenge standing in a MERS foreclosure. This risk is illustrated as follows: a foreclosing MERS plaintiff acquires title through a strict foreclosure and the property is sold. Afterwards the borrowers retain counsel and file a motion to reopen and dismiss, claiming that there was never any subject matter jurisdiction in the foreclosure because MERS never owned the note. The lender might not find a safe harbor under C.G.S. § 49-15, because an absence of subject matter jurisdiction cannot be waived and may be raised at anytime.

The Defendant attest that according to this  cause of action ( Lis Pendens) filed on the Land Records according to the Defendant's Exhibit C. The named Plaintiff is seeking to

10.

foreclosure of the Defendant Mortgage on behalf MERS. The named Plaintiff without Standing to act on behalf of MERS and foreclose on the Defendant's equitable title to the Mortgage having never owned the Note. The named Plaintiff is without standing before the Court because neither the Note and or Mortgage was assigned to the named Plaintiff as has been alleged in the Complaint. The Defendant claims that counsel for the named Plaintiff is fully aware of the lack of standing that both MERS and the named Plaintiff lack and the Defendant claims this is one reason why MERS is not named as a co-plaintiff in the writ, summons and complaint. And why the Lis Pendens, the cause of action was not served upon the Defendant or filed in Court with the writ summons and complaint in an attempt through fraud upon the Court through the frivolous filings in support of this action by counsel for the named Plaintiff, JPMorgan Chase Bank N.A., who is not the holder in due course of the Note / Debt and has suffered no injury.

**WHEREFORE**, because the named Plaintiff commenced this action which seeks foreclose the Defendant's Mortgage on behalf of MERS,. And MERS is not a named co-plaintiff in the said action. There is no evidence presented by the named Plaintiff where by the Court can make findings of material and substantive facts of that the named Plaintiff was the owner and holder in due course of the Note / Debt and or acquired the Note in good faith. Or that the Mortgage was actually assigned as alleged. It is the Defendant's *prayer for relief* is that this action be dismiss with PREJUDICE and that the Court and that the Court exercise its equitable powers for a declaratory judgment in favor of the Defendant's in that the making of the Note and mortgage because MERS was never the nominee for Mortgage Capital Associates Inc., and the Mortgage was filed on the Land Records was filed in bad faith by MERS.

Dated 8/9/2019

THE DEFENDANT

Johnny Ray Moore, Pro se
15 Sachem Drive
Shelton CT 06484
(203) 395-4282
11.  greenenergyjrm@gmail.com

## CERTIFICATION OF SERVICE

I hereby certify that a copy of the Memorandum of Law in Support of the Defendant

Motion to Dismiss, Doc. No. 126, was mailed and or electronic delivered on August 9, 2019, to

the following party listed below:


Attorney William J. Davenport
McCalla Raymer Leibert Pierce, LLC
50 Weston Street
Hartford CT 06120
203-808-0606
william.davenport@mccalla.com

Christopher Picard
McCalla Raymer Leibert Pierce, LLC
50 Weston Street
Hartford CT 06120
203-808-0606
chris.picard@mcalla.com


Dated  9/8/2019

Johnny Ray Moore, Pro Se
15 Sachem Drive
Shelton CT 06484
203-395-4282
johnnyraybanker@gmail.com

12.