**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

| | | |
|---|---|---|
| IN RE: ) | | |
| ) | CASE No. | 19-51257 (JAM) |
| JOHNNY RAY MOORE, ) | | |
| ) | CHAPTER | 13 |
| DEBTOR. ) | | |
| _____ ) | | |
| JP MORGAN CHASE BANK, NA, ) | | |
| MOVANT, ) | | |
| ) | | |
| V. ) | | |
| ) | | |
| JOHNNY RAY MOORE, ) | | |
| RESPONDENT. ) | RE: ECF No. | 72 |
| _____ ) | | |

**Appearances**

Linda St. Pierre, Esq.                                              *Attorney for the Movant*
McCalla Raymer Leibert Pierce, LLC
50 Weston St.
Hartford, CT 06120

Mr. Johnny Ray Moore                                                *Pro se Debtor*

**MEMORANDUM OF DECISION AND ORDER**
**GRANTING MOTION FOR RELIEF FROM AUTOMATIC STAY**

Julie A. Manning, Chief United States Bankruptcy Judge

On September 20, 2019, Johnny Ray Moore (the "Debtor") filed a Chapter 13 petition in this Court. On January 16, 2020, JPMorgan Chase Bank, National Association ("JP Morgan"), filed a Motion for Relief from Stay seeking relief pursuant to 11 U.S.C. §§ 362(d)(1) and (d)(2), and *in rem* relief pursuant to § 362(d)(4) (the "Motion for Relief from Stay") regarding the Debtor's real property commonly known as 10 Rosemary Drive, Stratford, CT 06615 (the "Property"). ECF No. 72. On January 23, 2020, the Debtor filed a Motion for Extension of Time to February 6, 2020, to respond to the Motion for Relief From Stay, which was granted.

The Debtor filed an objection to the Motion for Relief from Stay on February 6, 2020 (the "Objection"). On February 12, 2020, a Notice of Hearing was issued scheduling a hearing on the Motion for Relief from Stay for February 18, 2020. On February 14, 2020, after the Debtor notified the Court that he was unavailable to attend a hearing on February 18, 2020, the Court entered an order extending the hearing to February 25, 2020, and ordering that no further extensions of the hearing would be granted.

JP Morgan filed a response to the Objection on February 20, 2020 (the "Response to Objection"). On February 24, 2020, the Debtor filed a Motion to Continue the February 25th hearing on the Motion for Relief from Stay. Although the Motion to Continue was not timely filed and was not scheduled to be heard on February 25, 2020, the Motion to Continue was denied during the hearing. Counsel for JP Morgan and the Debtor presented oral arguments on the Motion for Relief from Stay during the February 25th hearing. At the conclusion of the hearing, the Court granted the Motion for Relief from Stay and indicated that a written decision and order would be forthcoming. For the reasons stated on the record during the hearing held on February 25, 2020, and for the reasons that follow, the Motion for Relief from Stay is granted.[1]

**I.    Background**

1.    On or about January 31, 2007, the Debtor purchased the Property. The Debtor executed an Adjustable Rate Note in the original amount of $267,000.00 (the "Note"), a Prepayment Addendum to Note, a 1-4 Family Rider, an Adjustable Rate Rider, a Prepayment Rider, and an Open-Ended Mortgage Deed (the "Mortgage") in connection with the Property

---

[1] The Court notes that during the February 25th hearing, it also granted the Trustee's Motion to Dismiss with Prejudice. A written ruling granting the Motion to Dismiss with Prejudice will also issue today.

in favor of Mortgage Capital Associates, Inc. *See* Exhibits A and B to the Motion for Relief from Stay.

2. JP Morgan is the holder and owner of the Note by assignment from Mortgage Electronic Registration Systems, Inc. as Nominee for Mortgage Capital Associates, Inc. *See* Exhibit C to the Motion for Relief from Stay. Therefore, JP Morgan is a party in interest pursuant to 11 U.S.C. § 362(d) and is entitled to seek the relief set forth in the Motion for Relief from Stay.

### A. JP Morgan's 2009 Foreclosure Action

3. The Debtor defaulted on the Note on June 1, 2009. *See* Response to Objection.

4. Thereafter, JP Morgan commenced a foreclosure action against the Debtor with regard to the Property (the "2009 Foreclosure Action") and filed a lis pendens on the Property. *See JP Morgan Chase Bank N.A. v. Johnny Ray Moore*, FBT-CV-096004293-S (Conn. Super. Ct. 2009).

### B. The Debtor's 2012 Bankruptcy Case

5. On May 31, 2012, the Debtor filed a Chapter 13 bankruptcy case, Case No. 12-51027 (the "2012 Bankruptcy Case"). The 2009 Foreclosure Action was pending at the time the Debtor filed the 2012 Bankruptcy Case. *See* Response to Objection.

6. On July 10, 2012, the Chapter 13 Trustee filed a Motion to Confirm the Chapter 13 Plan or in the alternative to Dismiss the Case for Failure to Propose a Feasible Plan (the "Motion to Confirm the Chapter 13 Plan"). On July 12, 2012, a Notice of Hearing was issued scheduling a hearing on the Motion to Confirm the Chapter 13 Plan for August 30, 2012.

7. On July 13, 2012, the Debtor filed a Chapter 13 Plan. On its face, the proposed Chapter 13 Plan did not comply with the requirements of 11 U.S.C. § 1322 and was not confirmable.

8. On August 30, 2012, the hearing on the Motion to Confirm the Chapter 13 Plan was continued to September 20, 2012. On September 20, 2012, the hearing on the Motion to Confirm the Chapter 13 Plan was again continued to November 15, 2012.

9. On October 15, 2012, JP Morgan filed an objection to confirmation of the Debtor's Chapter 13 Plan.

10. On November 16, 2012, JP Morgan filed Proof of Claim No. 17 with respect to the Property and attached the Note, Mortgage, and Assignment as evidence of the debt and its right to enforce the Note ("JP Morgan's 2012 Proof to Claim"). According to JP Morgan's 2012 Proof to Claim, the Debtor's arrearage on the Note at the time of the 2012 Bankruptcy Case was $79,410.58 and the Debtor had not made a payment on the Note since May 1, 2009.

11. Ten days before the third scheduled confirmation hearing on the Debtor's Chapter 13 Plan, the Debtor filed a Motion to Extend Time to Convert the 2012 Bankruptcy Case from Chapter 13 to Chapter 11.

12. On November 15, 2012, the confirmation hearing on the Chapter 13 Plan was not held, but the Debtor was required to file a Motion to Convert his 2012 Bankruptcy Case from Chapter 13 to Chapter 11 by November 26, 2012 (the "Motion to Convert").

13. On November 26, 2012, the Debtor filed a Motion to Convert, which was granted on November 29, 2012.

14. Following the conversion of the Debtor's case to Chapter 11, the Debtor filed an Objection to JP Morgan's 2012 Proof to Claim alleging that JP Morgan lacked standing to file the Proof of Claim because JP Morgan was not in physical possession of the Note and failed to present any evidence to prove that it was the owner of the Note.

15. On January 23, 2013, the Debtor and JP Morgan executed a Loan Modification Agreement with regard to the Property (the "Loan Modification Agreement"), in which the Debtor agreed to make modified loan payments to JP Morgan in exchange for JP Morgan withdrawing the 2009 Foreclosure Action. *See* Response to Objection. The Debtor then resumed making payments to JP Morgan under the Loan Modification Agreement. *See* Response to Objection.

16. On April 19, 2013, JP Morgan filed an Amended Proof of Claim No. 17, to which was attached the Loan Modification Agreement ("JP Morgan's 2013 Amended Proof of Claim").

17. On August 16, 2013, the Debtor filed an Objection to JP Morgan's 2013 Amended Proof of Claim, alleging, among other things, that JP Morgan did not own the Note.

18. On March 26, 2014, the United States Trustee filed a Motion to Compel, or in the alternative, to Convert or Dismiss the 2012 Bankruptcy Case because the Debtor failed to file several required monthly operating reports and failed to file a Disclosure Statement and Chapter 11 Plan.

19. On April 9, 2014, the Debtor entered into a Stipulated Order with the United States Trustee setting a deadline for filing a Disclosure Statement and Chapter 11 Plan, obtaining confirmation of a Chapter 11 Plan, and filing the required monthly operating

5

reports (the "Stipulated Order"). The Stipulated Order required that the Debtor file a Disclosure Statement and a confirmable Chapter 11 Plan by September 2, 2014, which was more than twenty-two months after the Debtor's Chapter 13 case was converted to Chapter 11.

20. Despite entering into the Stipulated Order, four days before the Debtor was required to file a Disclosure Statement and Plan, the Debtor instead filed an adversary proceeding against JP Morgan and other secured creditors seeking injunctive and declaratory relief sustaining his objections to the claims of the secured creditors, including JP Morgan. The complaint's prayer for relief sought a declaratory ruling that:

> a.  A) The Debtor SHALL NOT file a Disclosure Statement … and a Confirmable Chapter 11 Plan of Reorganization by September 2, 2014, unless and until his objections to the Proof of Claims have been settled; [and] B) The Debtor SHALL NOT obtain confirmation of a Chapter 11 Plan of Reorganization by December 2, 2014, unless and until his objections to the Proof of Claims have been settled.
>
> On September 25, 2014, the United States Trustee filed a declaration regarding the Debtor's failure to comply with the Stipulated Order and requesting the Court enter an order converting the 2012 Bankruptcy Case from Chapter 11 to Chapter 7.

21. On October 29, 2014, the Court converted the 2012 Bankruptcy Case from Chapter 11 to Chapter 7.

22. At no point during the 2012 Bankruptcy Case did the Debtor successfully confirm a Chapter 13 or Chapter 11 Plan.

23. The 2012 Bankruptcy Case remained pending, and the Debtor had the benefit of the automatic stay from May 31, 2012 until February 4, 2015, when the Debtor was granted a Chapter 7 discharge.

### C. The Debtor's 2016 Bankruptcy Case

24.     On August 24, 2016, the Debtor filed a second Chapter 13 bankruptcy, Case No. 16-51133 (the "2016 Bankruptcy Case").

25.     On September 2, 2016, the Debtor filed a Chapter 13 Plan. ECF No. 8. On its face, the Chapter 13 Plan did not comply with the requirements of 11 U.S.C. § 1322, was not confirmable, and did not treat JP Morgan's claim on the Property. As was true in the 2012 Bankruptcy Case, the Debtor did not confirm a Chapter 13 Plan in the 2016 Bankruptcy Case.

26.     On or about September 30, 2016, the Debtor stopped making payments to JP Morgan as required by the Loan Modification Agreement. *See* Response to Objection.

27.     On October 31, 2016, the Chapter 13 Trustee filed a Motion to Dismiss the 2016 Bankruptcy Case under 11 U.S.C. § 1307(c) alleging the Debtor's failure to prosecute the case. On January 18, 2017, the Chapter 13 Trustee filed an Amended Motion to Dismiss the 2016 Bankruptcy Case further alleging that the Debtor was not eligible to be a debtor under Chapter 13 because his secured debts exceeded the secured debt limitations under § 109(e).

28.     On February 16, 2017, JP Morgan filed Proof of Claim No. 14 and attached the Note, Mortgage, Assignment, and Loan Modification Agreement as evidence of the debt with regard to the Property ("JP Morgan's 2017 Proof of Claim"). According to JP Morgan's 2017 Proof of Claim, the debt owed JP Morgan was $215,148.30.

29.     On March 8, 2017, the Debtor filed an Objection to JP Morgan's 2017 Proof of Claim, alleging that JP Morgan did not possess a perfected security interest in the Property

and that the claim should be disallowed because the Debtor received a discharge in the 2012 Bankruptcy Case (the "Objection to JP Morgan's 2017 Proof of Claim").

30. On September 15, 2017, the Court entered an Order overruling the Objection to JP Morgan's 2017 Proof of Claim. This Court stated "[w]hile a bankruptcy discharge eliminates a borrower's personal liability with respect to real property secured by a lien, the Chapter 7 discharge does not eliminate a lien on the property and a lender is still permitted to proceed with its *in rem* rights with respect to the property if timely payments are not made."

31. On December 14, 2017, the Court held a hearing on the Amended Motion to Dismiss. A hearing on confirmation of the Debtor's Chapter 13 Plan was also scheduled for the same day. The Debtor failed to appear at the December 14th hearing despite appropriate notice having been provided to him.

32. On December 15, 2017, the Court issued an Order to Appear and Show Cause why the case should not be dismissed as a bad faith filing (the "Order to Appear and Show Cause") and set a hearing on the Order to Appear and Show Cause for January 10, 2018.

33. On January 10, 2018, the Court held the hearing on the Order to Appear and Show Cause. The Debtor, Chapter 13 Trustee, and at least one creditor appeared at that hearing. During the hearing, the Debtor was examined under oath as to why the case should not be dismissed as a bad faith filing. The Court found the Debtor's testimony corroborated many of the allegations of the Debtor's bad faith conduct.

34. The 2016 Bankruptcy Case was dismissed with prejudice on January 12, 2018, with a one-year bar to refiling pursuant to §§ 109(e), 1307(c), 349(a), and 105.

### D. JP Morgan's 2018 Foreclosure Action

35. After the 2016 Bankruptcy Case was dismissed, JP Morgan commenced a 2018 Foreclosure Action against the Debtor regarding the Property (the "2018 Foreclosure Action"). *See* Exhibit F to the Motion for Relief from Stay.

36. On February 19, 2019, the Debtor filed a Motion to Dismiss the 2018 Foreclosure Action, which the Connecticut Superior Court denied on June 11, 2019.

37. On June 26, 2019, the Debtor filed a Motion to Vacate the Order denying the Debtor's Motion to Dismiss, which, the Connecticut Superior Court denied on July 24, 2019.

38. The 2018 Foreclosure Action remains pending.

### E. The Debtor's 2019 Bankruptcy Case

39. On September 20, 2019, the Debtor filed his third Chapter 13 bankruptcy, Case No. 19-51257 (the "2019 Bankruptcy Case").

40. On November 22, 2019, JP Morgan filed Proof of Claim No. 3 regarding the Property, claiming the Debtor owes JP Morgan $260,744.65 ("JP Morgan's 2019 Proof of Claim").

41. On February 6, 2020, the Debtor filed an Objection to JP Morgan's 2019 Proof of Claim alleging: (i) as he did in the 2012 Bankruptcy Case and 2016 Bankruptcy Case, that JP Morgan is not in possession of the Note or the Mortgage and that JP Morgan lacks standing; and (ii) as he did in the 2016 Bankruptcy Case, that the debt was discharged in his Chapter 7 case.

42. On December 13, 2019, the Debtor filed a First Amended Chapter 13 Plan. The First Amended Chapter 13 Plan lists the secured creditor of the Property as Mortgage Electronic Registration Systems, Inc. ("MERS") instead of JP Morgan, and proposes to retain

9

the Property. It lists the claim as having an "alleged" arrearage of $54,212.32 with respect to the Property.

43. On January 16, 2020, JP Morgan filed the Motion for Relief from Stay.

## II. Discussion

JP Morgan seeks relief from the automatic stay under 11 U.S.C. §§ 362(d)(1), (d)(2), and (d)(4). Section 362(g) provides that the party requesting relief from the automatic stay has the burden of proof on the question of the debtor's equity in property and the party opposing relief has the burden on all other issues. 11 U.S.C. § 362(g). The moving party must first establish its *prima facie* case for relief. 3 *Collier on Bankruptcy*, ¶ 362.10, p. 362-135 (Alan N. Resnick & Henry J. Sommers eds., 16th ed.). A *prima facie* case requires a movant to show "a factual and legal right to the relief it seeks." *Id*. Under section 362(d), if a movant presents a *prima facie* case and no contrary evidence is presented, the Court "shall" grant the relief requested. 11 U.S.C. § 362(d). After a careful review of the record in this case, the Court finds that JP Morgan has met its burden and grants it relief under sections 362(d)(1), (d)(2), and (d)(4).

### A. Cause exists under section 362(d)(1) for granting relief from the stay

Section 362(d)(1) provides,

> On request of a party in interest and after notice and a hearing, the court *shall* grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest[.]

11 U.S.C. § 362(d)(1) (emphasis added). Cause is not defined in the Bankruptcy Code, but includes non-payment of a debt or a lack of adequate protection. *See In re Uvaydov*, 354 B.R. 620, 624 (Bankr. E.D.N.Y. 2006) (finding that debtor's failure to pay over $50,000 of post-petition mortgage payments over an eleven-month period constituted "more than ample cause to

lift the automatic stay"); *In re Kaplan Breslaw Ash, LLC*, 264 B.R. 309, 333 (Bankr. S.D.N.Y. 2001) (noting that "[t]he failure to provide adequate protection when the property is declining in value is a classic basis for granting relief from the stay for cause."). When cause exists, relief from the stay "shall" be granted. *See* 11 U.S.C. § 362(d).

The Motion for Relief from Stay establishes that cause exists to grant relief under section 362(d)(1) because, among other things, the Debtor defaulted on the Note in 2009 and on the Loan Modification Agreement in 2016, and at the very least has not made a payment to JP Morgan since September 2016. The Debtor has provided no evidence to refute that he has not made a payment to JP Morgan since September 2016, yet the Amended Chapter 13 Plan proposes to retain the Property regardless of JP Morgan's *in rem* rights to foreclose on the Property.

The Debtor can only retain the Property and avoid foreclosure if he satisfies JP Morgan's *in rem* rights to the Property. While a bankruptcy discharge precludes a secured creditor from pursuing a deficiency judgment against the debtor personally, it leaves intact the secured creditor's *in rem* right to foreclose if payments are not made. *Id*. As the United States Supreme Court held in *Johnson*, 501 U.S. at 84

> Even after the debtor's personal obligations have been extinguished, the mortgage holder still retains a "right to payment" in the form of its right to the proceeds from the sale of the debtor's property. Alternatively, the creditor's surviving right to foreclose on the mortgage can be viewed as a "right to an equitable remedy" for the debtor's default on the underlying obligation. Either way, there can be no doubt that the surviving mortgage interest corresponds to an "enforceable obligation" of the debtor.

If the Debtor wishes to retain the real properties subject to claims for which his personal liability has been discharged, he must treat those claims as secured claims or the creditors have a

"right to an equitable remedy" of foreclosure. Accordingly, cause exists to grant JP Morgan relief from the stay under section 362(d)(1).

### B. Relief from the stay is granted under section 362(d)(2)

JP Morgan next moves for relief under section 362(d)(2), arguing the Debtor has no equity in the Property and that the Property is not necessary to an effective reorganization. The Court agrees.

Section 362(d)(2) provides,

> On request of a party in interest and after notice and a hearing, the court *shall* grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>
> > (2) with respect to a stay of an act against property under subsection (a) of this section if the debtor does not have an equity in such property and such property is not necessary to an effective reorganization.

11 U.S.C. § 362(d)(2) (emphasis added). The Movant has established that the Debtor owes a debt of $262,538.62 with regard to the Property and the Debtor's Schedule A/B establishes that the fair market value of the Property is $225,000.00. Therefore, no equity exists in the Property. The Debtor has provided no evidence to refute this fact. Further, the Property is not necessary for an effective reorganization since there is no likelihood that the Debtor can propose and confirm a feasible Chapter 13 Plan. *See* 3 Collier on Bankruptcy, ¶ 362.07[4][b], p. 362-120 – 362-121 (Alan N. Resnick & Henry J. Sommers eds., 16th ed.) (explain that relief under section 362(d)(2) "should be granted if the debtor has no reasonable likelihood of reorganization). As such, relief under section 362(d)(2) is granted.

### C. JP Morgan is entitled to *in rem* relief under section 362(d)(4)

JP Morgan also argues it is entitled to *in rem* relief because the Debtor has engaged in multiple filings affecting the Property as part of a scheme to delay, hinder, or defraud JP Morgan. The Court agrees.

Pursuant to 11 U.S.C. § 362(d)(4),

> On request of a party in interest and after notice and a hearing, the court *shall* grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>
> (4) with respect to a stay of an act against real property under subsection (a), by a creditor whose claim is secured by an interest in such real property, if the court finds that the filing of the petition was part of a scheme to delay, hinder, or defraud creditors that involved –
> (A) transfer of all or part ownership of, or other interest in, such real property without the consent of the secured creditor or court approval; or
> (B) multiple bankruptcy filings affecting such real property.

11 U.S.C. § 362(d)(4) (emphasis added). *In rem* relief is available "when a creditor has demonstrated that the bankruptcy petition was filed as part of a scheme to delay, hinder, and defraud creditors," *In re O'Farrill*, 569 B.R. 586, 591 (Bankr. S.D.N.Y. 2017), and involves multiple bankruptcy filings affecting real property, *In re Muhaimin*, 343 B.R. 159, 167 (Bankr. D. Md. 2006).

Bankruptcy courts may "infer an intent to hinder, delay, and defraud creditors from the fact of serial filings alone." *In re Procel*, 467 B.R. 297, 308 (S.D.N.Y. 2012) (citation omitted); *see also In re Magnale Farms, LLC*, No. 17-61344, 2018 WL 1664849, at *6 (Bankr. N.D.N.Y. Apr. 3, 2018) (explaining a court can "draw a permissible inference of a scheme to hinder, delay, and defraud based on the mere timing and filing of several bankruptcy cases."); *In re Montalvo*, 416 B.R. 381, 387 (Bankr. E.D.N.Y. 2009) (recognizing the timing and sequencing of the filings significant to finding a scheme to hinder, delay, or defraud).

The purpose of section 362(d)(4) is to prevent abusive bankruptcy filings. *See In re Perkins*, 609 B.R. 576, 579 (Bankr. D. Conn. 2019) ("Subsection (d)(4) was added to address abuse impacting *real property* by providing 'the statutory authority to grant *in rem* relief' under certain circumstances.") (quoting *In re Montalvo*, 416 B.R. 381, 386 (Bankr. E.D.N.Y. 2009)). "By requiring that the filing of the petition must be part of a scheme to hinder, delay, or defraud a creditor that involves either an unauthorized transfer of the property or multiple bankruptcy filings affecting the property, section 362(d)(4) addresses conduct that could be indicative of an abusive bankruptcy filing in relation to a real property foreclosure." 3 Collier on Bankruptcy, ¶362.05[19][a], p. 362-84 (Alan N. Resnick & Henry J. Sommers eds., 16th ed.). "*In rem* orders are used in response to serial filers that are seeking to prevent foreclosure proceedings." *In re Price*, 304 B.R. 769, 773 (Bankr. N.D. Ohio 2004).

JP Morgan has demonstrated that the 2019 Bankruptcy Case was filed as part of a scheme to delay, hinder, or defraud JP Morgan from exercising its *in rem* rights.

### 1. The filing of multiple bankruptcy cases demonstrates the Debtor's scheme to delay, hinder, or defraud JP Morgan

The Debtor has filed multiple bankruptcy cases to delay, hinder, or defraud JP Morgan from foreclosing on the Property. The Debtor obtained the benefit of the automatic stay when he filed the 2012 Bankruptcy Case. The 2009 Foreclosure Action was therefore stayed, providing the Debtor time to negotiate the Loan Modification Agreement, which resulted in JP Morgan withdrawing the 2009 Foreclosure Action.

The Debtor filed his second bankruptcy case, the 2016 Bankruptcy Case, when he was again in default of his obligations to JP Morgan, this time under the Loan Modification Agreement. Immediately after filing the 2016 Bankruptcy Case, and again with the benefit of the automatic stay, the Debtor stopped making Loan Modification Agreement payments. The

Debtor was not able to confirm a Chapter 13 Plan in the 2016 case, but again enjoyed the benefit of the automatic stay for more than eighteen months.

After the Court dismissed the 2016 Bankruptcy Case with prejudice, JP Morgan commenced the 2018 Foreclosure Action. The Debtor then filed his third bankruptcy case, the 2019 Bankruptcy Case, which stayed the 2018 Foreclosure Action. The Debtor has not been able to propose a confirmable Chapter 13 Plan and, as noted above, the Debtor's Schedules I and J demonstrate that any proposed Chapter 13 Plan would not be feasible under 11 U.S.C. § 1325. Accordingly, the Court concludes that the Debtor's multiple bankruptcy cases were filed as part of a scheme to delay, hinder, or defraud JP Morgan.

### 2. The Debtor's duplicative and frivolous pleadings are further evidence of a scheme to delay, hinder, or defraud JP Morgan

The Debtor's continued challenges to JP Morgan's standing regarding the Property, the objections to JP Morgan's Proofs of Claim, and the failure to address JP Morgan's *in rem* rights provide additional evidence of the Debtor's scheme to delay and to frustrate JP Morgan's applicable non-bankruptcy law rights with respect to the Property.

For example, in the 2012 Bankruptcy Case, the Debtor filed the Objection to JP Morgan's 2012 Proof of Claim alleging that JP Morgan lacked standing to file a proof of claim regarding the Property. After two hearings on the Objection, the Debtor filed the adversary proceeding as a collateral challenge before the Court could rule on the Objection to JP Morgan's 2013 Amended Proof of Claim.

The Debtor engaged in a similar course of conduct in the 2016 Bankruptcy Case when he filed the Objection to JP Morgan's 2017 Proof of Claim, alleging that the Chapter 7 discharge he received in the 2012 Bankruptcy Case entirely voided JP Morgan's debt. The Debtor's Chapter 13 Plan did not include or provide for any treatment of JP Morgan's secured claim, and was not

15

able to be confirmed. Ultimately, the Debtor's 2016 Bankruptcy Case was dismissed with prejudice, upon this Court finding as follows:

> By repeatedly seeking continuances, failing to appear at the scheduled hearings on December 12, 2016 and December 14, 2016, commencing an adversary proceeding against the creditors on December 13, 2016, and pressing arguments which were or could have been asserted earlier and/or re-arguing theories previously advanced and rejected, the conduct of the Debtor supports the finding that he continues to hinder and delay creditors.

Likewise, in the 2019 Bankruptcy Case, the Debtor filed an Objection to JP Morgan's 2019 Proof of Claim again alleging that JP Morgan lacked standing to enforce the note and that the Debtor's *personal liability* on the debt owed to JP Morgan had been discharged. These issues were previously decided in the 2012 and/or 2016 Bankruptcy Cases. The Debtor's attempts to relitigate these issues here is additional evidence of his scheme to delay, hinder, or defraud JP Morgan. As noted by the United States District Court for the District of Connecticut when the Debtor appealed the dismissal of his 2016 Bankruptcy Case, "the Appellant does not intend to raise issues of substance on this appeal but rather, merely seeks continued delay." *See Johnny Ray Moore v. Pennymac Holdings, LLC et al*, Civ. No. 3:18-cv-317 (AWT), ECF No. 40.

### III.    Conclusion

After a review of: (i) the Debtor's conduct in and the records of the 2012 Bankruptcy Case, the 2016 Bankruptcy Case, and the 2019 Bankruptcy Case; (ii) the Debtor's conduct in and records of the 2009 Foreclosure Action and the 2018 Foreclosure Action; and (iii) the arguments advanced in the pleadings and at the hearings held on the Motion for Relief from Stay, in accordance with 11 U.S.C. §§ 362(d)(1), (d)(2), and (d)(4)(B); it is hereby

**ORDERED**: The Motion for Relief from Stay is GRANTED and JP Morgan is granted relief from the automatic stay under 11 U.S.C. §§ 362(d)(1), 362(d)(2), and 362(d)(4) and a separate Order granting relief from the stay will enter; and it is further

**ORDERED**: The fourteen (14) day stay provided in Fed. R. Bankr. P. 4001(a)(3) is hereby waived; and it is further

**ORDERED**: Pursuant to 11 U.S.C. § 1301(c), to the extent that the co-debtor stay in 11 U.S.C. § 1301(a) applies, it is hereby terminated; and it is further

**ORDERED**: At or before 6:00 p.m. on March 10, 2020, the Clerk's Office shall serve this Order upon the Debtor at the address listed on the petition.

Dated at Bridgeport, Connecticut this 10th day of March, 2020.

*Julie A. Manning*
*Chief United States Bankruptcy Judge*
*District of Connecticut*